**Barbara K. KEHL, Plaintiff,**

v.

**BOARD OF REVIEW OF the INDUSTRIAL COMMISSION OF UTAH, DEPARTMENT OF EMPLOYMENT SECURITY, Defendant.**

**No. 20193.**

Supreme Court of Utah.

May 23, 1985.

---

Scott W. Reed, Salt Lake City, for appellant.

K. Allan Zabel, Mike Larsen (Hercules), Carl N. Erickson (Hercules), Salt Lake City, for respondent.

DURHAM, Justice:

Barbara K. Kehl ("the petitioner") seeks review and reversal of a decision by the Board of Review of the Industrial Commission of Utah, Department of Employment Security ("the Board of Review"), affirming an administrative law judge's decision denying her unemployment insurance benefits. The ground for denial was that the petitioner had been discharged for "just cause" within the meaning of U.C.A., 1953, § 35–4–5(b)(1) (Supp.1983).[1] We affirm the Board of Review's decision.

The petitioner was employed as a forklift operator with Hercules, Inc. ("the employer"), from August 11, 1978, to April 24, 1984, when she was discharged for violating a company safety rule. The petitioner's duties included transporting rocket motors containing up to 10,000 pounds of explosives between various locations on the employer's premises. In transporting these motors, the petitioner was required to cross a segment of Kennecott Copper Company's ("Kennecott") railroad tracks. The employer's safety rules required adherence to the following procedures for crossing the tracks: (1) everyone moving explosives across Kennecott's tracks must be accompanied by an escort in a separate vehicle; (2) the forklift carrying the motor must stop at a marker 150 feet away from the tracks; (3) the escort must leave the escort vehicle, walk to a Kennecott telephone located near the tracks, and telephone the Kennecott dispatcher for clearance to cross the tracks; and (4) upon receiving clearance from the Kennecott dispatcher, the escort must personally determine that the tracks are clear and then signal the forklift to cross. The procedure required contacting the Kennecott dispatcher because it was not unusual for Kennecott to have as many as five trains or trolleys following one another down the track, and the dispatcher was the only person familiar with the train schedules and the locations of trains on the tracks. The petitioner was discharged for violating this safety procedure.

When she was first hired to operate the forklift, the petitioner signed a three-part card indicating that she was aware of and understood the procedure described above. Part one was signed after she read the rules, part two was signed after she saw the procedure performed, and part three was signed after she performed the procedure. Until the incident resulting in her discharge, the petitioner had never violated this rule.

She was involved in an accident about two months prior to her discharge in which the forklift she was operating struck and damaged one of her employer's buildings. She was issued a written warning and was verbally instructed that any further violation could result in her discharge. The petitioner refused to sign the accident report on this first incident because she felt it misrepresented what had happened.

The incident resulting in the petitioner's discharge occurred on April 20, 1984. On that day, the petitioner was transporting a motor containing explosives across Kennecott's tracks. Upon approaching the tracks, the petitioner observed a train about one mile away that had passed the crossing several minutes earlier. Instead of stopping, she merely slowed down and proceeded across the tracks.

Upon learning of this incident, the employer suspended the petitioner pending consultation with the vice president and general plant manager. The employer's representatives met with the petitioner and reviewed her familiarity with the area where the infraction had occurred, her knowledge of the procedure governing

---

1. The legislature has undertaken a change in the designation of this statute and its subsections, which are now cited as U.C.A., 1953, § 35–4–5(2)(a) (Interim Supp.1984). The relevant provisions remain the same.

transportation of explosives, and any extenuating circumstances. After considering the magnitude of the violation, the potential for bodily injury and property damage, and the petitioner's awareness of the safety rules as demonstrated by the signed three-part card and proper compliance in the past, the employer discharged the petitioner on April 24, 1984, for what it considered a major violation of its safety rules.

The Department of Employment Security denied the petitioner's initial claim for benefits because she had knowingly violated a safety rule regarding forklift operations. In a hearing before the administrative law judge, the petitioner attributed the violation to a snowstorm and faulty exhaust equipment. She contended that the combination of keeping the cab closed because of the storm and the exhaust fumes in the cab from the faulty equipment affected her judgment and caused her to violate the rule. The administrative law judge discounted this, however, because the petitioner had not mentioned this contention during a meeting with her employer and an Equal Employment Opportunity representative, even though she had had an opportunity to do so.

The administrative law judge held that the petitioner was discharged for just cause; thus, she was ineligible for unemployment benefits under U.C.A., 1953, § 35–4–5(b)(1) (Supp.1983). The Board of Review affirmed the administrative law judge's decision, whereupon the petitioner filed an appeal to this Court pursuant to U.C.A., 1953, § 35–4–10(i) (Supp.1983). The only issue on appeal is whether the facts in this case are sufficient to warrant a decision that the petitioner was discharged for just cause.

*I. Standards Applied in Other Jurisdictions with Just Cause Provisions*

This case is the first in which we have been asked to apply the just cause provision of our statute. Since the question is one of first impression for this Court, we examine for guidance the decisions of other jurisdictions construing similar statutory language. In Indiana, for example, an employee is disqualified from receiving unemployment compensation if discharged for just cause. Ind.Code Ann. § 22–4–15–1(b) (Burns Supp.1983). The Indiana Code defines "discharge for just cause" as follows:

(e) "Discharge for just cause" as used in this section is defined to include but not be limited to:

. . . .

(2) Knowing violation of a reasonable and uniformly enforced rule of an employer;

. . . .

(7) Conduct endangering safety of self or coworkers;

(8) [A]ny breach of duty in connection with work which is reasonably owed an employer by an employee.

Ind.Code Ann. § 22–4–15–1(e) (Burns Supp. 1983). The Indiana Court of Appeals has interpreted just cause as follows: " '[J]ust cause,' as used in the Employment Security Act, means failure or volition, and does not mean something blame worthy, culpable, or worthy of censure." *Wakshlag v. Review Board of the Indiana Employment Security Division,* Ind.App., 413 N.E.2d 1078, 1082 (1980).

Ohio also disqualifies unemployment compensation claimants who are discharged for just cause. In *Harp v. Administrator, Bureau of Unemployment Compensation,* 12 Ohio Misc. 34, 37, 230 N.E.2d 376, 379 (Ct. C.P. Hamilton County 1967), the Ohio Court of Common Pleas said, " '[J]ust cause' means that if an impartial person examined *all* the facts and circumstances of the case, he would conclude that the discharge was merited." (Emphasis in original.) That case also involved an employee who was discharged for violation of a company rule. Although the court found that the employee was not discharged for just cause within the meaning of the statute, it did so because it found that the employer did not enforce the rule fairly.

Along with Indiana and Ohio, Delaware disqualifies unemployment compensation claimants who are discharged for just cause. According to the Delaware Superi-

or Court, denial of benefits is appropriate where substandard performance is the result of a willful act in violation of the employer's interests and is not the result of mere inefficiency or inadvertence. *Starkey v. Unemployment Insurance Appeal Board,* Del.Super.Ct., 340 A.2d 165, 166–67 (1975). The claimant in that case was discharged from his position as a grounds keeper because he was slow in performing his duties and spent much of his time talking to people on the street. The court found this sufficient to support a finding of discharge for just cause because the substandard performance was intended and was in violation of the employer's interests. *Id.* at 167.

*II. Standard for Determining Just Cause Under the Department of Employment Security's Proposed Rules and Regulations*

■ The administrative law judge in this case determined that the petitioner had been discharged for just cause by applying the Department of Employment Security's Proposed Rules and Regulations. In reviewing such a determination, this Court adheres to the following standard of review, enunciated in *Utah Department of Administrative Services v. Public Service Commission,* Utah, 658 P.2d 601 (1983):

> An agency's interpretation of key provisions of the statute it is empowered to administer is often inseparable from its application of the rules of law to the basic facts.... In reviewing decisions such as these, a court should afford great deference to the technical expertise or more extensive experience of the responsible agency....
>
> The degree of deference extended to the decisions of the [Public Service] Commission on these intermediate types of issues [those involving statutory interpretations described above] has been given various expression, but all are variations of the idea that the Commission's decisions must fall within the limits of reasonableness or rationality.

*Id.* at 610. Thus, unless the administrative law judge's decision based on the Proposed Rules and Regulations is outside the limits of reasonableness or rationality, we will uphold it.

■ Proposed Rule A71–07–1:5(A)(2) requires a finding of fault to satisfy the just cause requirement of U.C.A., 1953, § 35–4–5(b)(1) (Supp.1983). Proposed Rule A71–07–1:5(A)(3) requires the following for a finding of fault:

> The basic factors which establish fault, and are essential for a determination of ineligibility under the definition of just cause are:
>
> a. *Culpability.* This is the seriousness of the conduct as it affects continuance of the employment relationship. The discharge must have been necessary to avoid actual or potential harm to the employer's rightful interests. A discharge would not be considered "necessary" if it is not consistent with reasonable employment practices. The wrongness of the conduct must be considered in the context of the particular employment and how it affects the employer's rights. If the conduct was an isolated incident of poor judgment and there is no expectation that the conduct will be continued or repeated, potential harm may not be shown and therefore it is not necessary to discharge the employee.
>
> b. *Knowledge.* The employee must have had a knowledge of the conduct which the employer expected. It is not necessary that the claimant intended to cause harm to the employer, but he should reasonably have been able to anticipate the effect his conduct would have. Knowledge may not be established unless the employer gave a clear explanation of the expected behavior or had a pertinent written policy, except in the case of a flagrant violation of a universal standard of behavior. If the employer's expectations are unclear, ambiguous or inconsistent, the existence of knowledge is not shown. A specific warning is one way of showing that the employee had knowledge of the expected conduct. After the employee is given a warning, he should be given an opportu-

nity to correct objectionable conduct. Additional violations occurring after the warning would be necessary to establish just cause for a discharge.

c. *Control.* The conduct must have been within the power and capacity of the claimant to control or prevent.

In light of the meaning given "just cause" in other jurisdictions, we hold that the Proposed Rules and Regulations are within the limits of reasonableness and rationality.

The petitioner argues that her conduct does not satisfy the culpability requirement of the Proposed Rule because it amounted to "an isolated incident of poor judgment." We note that there is some ambiguity in the record as to whether the petitioner was discharged solely because of the incident on April 20, 1984, or because of a combination of that incident and the previous accident. The petitioner testified at the hearing before the administrative law judge that her discharge was based on both, whereas the employer's representative testified that her discharge was based solely on her failure to follow the proper procedure in crossing Kennecott's railroad tracks. The decision of the administrative law judge, followed by the Board of Review, appears to be based solely on the latter incident.

■ Assuming that the administrative law judge's ruling was based only on the later incident, we are satisfied that the petitioner's conduct on that occasion meets the culpability requirement of the Proposed Rule. The rule reads: "If the conduct was an isolated incident of poor judgment and there is no expectation that the conduct will be continued or repeated, potential harm *may* not be shown and therefore it is not necessary to discharge the employee." Proposed Rule A71–07–1:5(A)(3)(a) (emphasis added). The use of the conditional "may" instead of the imperative "can" shows that the Proposed Rule allows for cases such as this, where a single violation of a safety rule may be sufficient to show that the potential harm to the employer's interests warranted discharge. Furthermore, this Court, in a case involving viola-

tion of an employer's rule regarding attendance, has previously stated, in dicta, that a single violation of an employer's rule may be sufficient to warrant disqualification from unemployment benefits where the employee reasonably should have known that violation would interrupt the employer's operations. *Trotta v. Department of Employment Security,* Utah, 664 P.2d 1195, 1200 (1983). The violation in this case is of that stature.

■ In addition, the proper emphasis under the culpability requirement should not be upon the number of violations; rather, it should address the problem of whether the discharge was "necessary to avoid actual or potential harm to the employer's rightful interest." Proposed Rule A71–07–1:5(A)(3)(a). According to the rule, a discharge is not necessary "if it is not consistent with reasonable employment practices," and "[t]he wrongness of the conduct must be considered in context of the particular employment and how it affects the employer's rights."

■ As mentioned above, the motors the petitioner was moving contained up to 10,000 pounds of explosives, and the trains and trolleys using the track the petitioner had to cross in moving the motors often traveled in groups of up to five. The petitioner's awareness that one train had passed the crossing in no way assured that there were no more following. Indeed, it might well have been an indication to the contrary. The facts of this case meet the culpability requirement because the wrongness of the conduct, when viewed in the context of the employment and the potentially devastating effects on the employer's rights, was severe and because the discharge was necessary to avoid the potential harm to the employer's interests that another violation could cause.

■ The petitioner also contends that the knowledge requirement was not met because, at the time of the violation, she did not have knowledge of the conduct expected of her. At the hearing before the administrative law judge, the petitioner ar-

gued that her violation of the crossing rule was the result of impaired judgment caused by exhaust fumes leaking into the cab of the forklift. She contended that because of the effects of the fumes she did not knowingly violate the rule. The administrative law judge, however, discounted this assertion because it was presented for the first time at the hearing before him. He found that the petitioner knowingly violated the rule. The Board of Review adopted the administrative law judge's findings of fact. This Court will not overturn the Board of Review's findings of fact unless they are "clearly arbitrary and capricious." *Salt Lake City Corp. v. Department of Employment Security*, Utah, 657 P.2d 1312, 1315 (1982). Because the petitioner failed to present this contention at the hearing with her employer or in her report immediately following the incident and because, according to her own testimony before the administrative law judge, she never requested maintenance on the forklift, there was adequate evidence to support the administrative law judge's finding of fact.

The petitioner's assertion about the exhaust fumes also raises the issue whether the control requirement was met. Because that assertion was discounted, however, and because there was no other evidence suggesting that the petitioner was not in control of her conduct, this requirement was also satisfied.

The petitioner also contends on appeal that discharge for just cause requires a finding of willfulness or wantonness, citing *Continental Oil Co. v. Board of Review*, Utah, 568 P.2d 727, 731 (1977), for this proposition. The Court in *Continental Oil*, however, was interpreting the meaning of "misconduct" under U.C.A., 1953, § 35–4–5(b)(1) before it was amended to replace "misconduct" with the definition given that word in *Continental* (an act which is willful, deliberate, or wanton). U.C.A., 1953, § 35–4–5(b)(1) (Supp.1983). Discharge for just cause was added to this section as a further reason for denying unemployment benefits and constitutes a separate standard from the deliberate, willful, or wanton standard.

In conclusion, the facts of this case amply support a finding that the petitioner was discharged for just cause. Therefore, the judgment of the Board of Review denying the petitioner unemployment compensation is affirmed.

HALL, C.J., and HOWE and ZIMMERMAN, JJ., concur.

STEWART, J., concurs in the result.