LAW OFFICES OF DAVID PAUL WHITE AND ASSOCIATES, Employer–Petitioner,

v.

BOARD OF REVIEW OF the INDUSTRIAL COMMISSION OF UTAH, Department of Employment Security, and Lynn A. Jones, Respondents.

No. 880538–CA.

Court of Appeals of Utah.

Aug. 3, 1989.

---

**22**

David Paul White, Salt Lake City, for employer-petitioner.

R. Paul Van Dam and K. Allan Zabel, Salt Lake City, for respondents.

## OPINION

Before BILLINGS, GARFF and JACKSON, JJ.

GARFF, Judge:

This is an appeal from a decision of the Board of Review of the Industrial Commission (Board) awarding claimant, Lynn A. Jones, unemployment compensation benefits. The Board concluded that claimant was entitled to benefits because she was not discharged for disqualifying conduct under Utah Code Ann. § 35–4–5(b)(1) (1988). We reverse.

## FACTS

Petitioner, sole practitioner David Paul White, employed claimant as a legal secretary and office manager from July 15, 1985 to March 11, 1988, when he discharged her.

Petitioner gave three major reasons for discharging claimant: (1) she was brusque and inflexible with clients and court clerks, (2) she gave out legal advice contrary to the professional code of ethics, and (3) she discussed confidential cases with other clients.

From the time petitioner hired claimant, he had been concerned with claimant's brusque manner in treating clients, clerks, and others, resulting in their comments to petitioner that claimant had been curt with them. Further, claimant would fly into a temper tantrum if someone set additional work on her desk. Consequently, petitioner instructed claimant on several occasions as to how to behave, what to change, how to treat clients, and how to work with the other office staff. After discussing these problems with claimant, petitioner found that she would improve her performance for a day or two, but would then revert to her prior behavior.

Petitioner testified that several court clerks and judges had told him that his secretary refused to work with them on scheduling court dates and performing other routine matters. She was rude and belligerent and, on some occasions, would hang up the phone on them. Petitioner dealt with this behavior on a daily basis and, on occasion, told claimant that he would have to discharge her if her performance did not improve.

Further, claimant made numerous errors, including sending legal documents to the wrong courts and requesting documents from incorrect sources. Plaintiff instructed her several times on how to determine from which court, prosecutor, and clerk to request information, and where to send the documents. She often failed to notify clients of court dates and, on one occasion, when a client called to find out why a bench warrant had been issued for him

because he had missed an arraignment date of which he had not been notified, she called him a liar and slammed down the telephone.

Petitioner stated that claimant's attitude continued to deteriorate and that she was unreceptive to his instruction on how to improve. He also testified that because of this behavior, his firm was getting a reputation for doing shoddy work and for being difficult to deal with.

Petitioner's law clerk reported that claimant had given legal advice to clients on at least two occasions. On the first occasion, a divorce client told claimant that he felt like fleeing the state to avoid having his wages garnished. Claimant responded that this was not a good idea, but failed to refer him to petitioner. We note that claimant felt that this comment was a personal statement rather than legal advice. On the second occasion, a client, who knew that claimant was a secretary rather than an attorney, called and asked claimant for information regarding waiver of her waiting period for her divorce. Claimant, referring to a case previously handled in the office, erroneously told the client that waivers were granted only in cases where a doctor would certify that the waiting period would cause a nervous breakdown.

Finally, the law clerk informed petitioner that claimant was revealing confidential information about clients to other clients, despite having been instructed, on several occasions, not to discuss clients' cases with other people. On two to three occasions, he overheard claimant talking with a certain divorce client about other, parallel divorce cases the law office was handling. On another occasion, he heard claimant talking to some of petitioner's clients about other, unrelated cases being handled by the office. He did not hear claimant mention any names, although he heard her give specific, identifiable information.

On March 11, 1988, petitioner handed claimant a previously prepared termination notice based on "insubordination and gross misconduct and negligence." Claimant applied for unemployment insurance benefits. The administrative law judge (A.L.J.)

awarded benefits to her pursuant to Utah Code Ann. § 35–4–5(b)(1) (1988), on the grounds that she had not been discharged for "just cause."

Petitioner appealed the A.L.J.'s decision to the Board, which, on August 16, 1988, rendered a split decision affirming the A.L.J.'s decision. Petitioner then brought this appeal.

On appeal, petitioner claims that the Board erred in not recognizing that claimant was terminated for just cause because of claimant's insubordination and other misconduct.

## STANDARD OF REVIEW UNDER THE UTAH ADMINISTRATIVE PROCEDURES ACT

Because these proceedings were commenced after January 1, 1988, review is governed by the Utah Administrative Procedures Act (UAPA), Utah Code Ann. § 63–46b–1 to 63–46b–22 (1988).

Whether an employee is terminated for "just cause" is a mixed question of law and fact. *Pro–Benefit Staffing, Inc. v. Board of Review*, 775 P.2d 439, 441 (Utah Ct.App. 1989). Under the UAPA, appellate review of mixed questions of law and fact is governed by Utah Code Ann. § 63–46b–16(4)(d) (1988), which provides for relief in the event petitioner has been substantially prejudiced when the Board erroneously interprets or applies the law. Accordingly, this court "will not disturb the Board's application of its factual findings to the law unless its determination exceeds the bounds of reasonableness and rationality." *Pro–Benefit*, 775 P.2d at 442.

## TERMINATION FOR JUST CAUSE

■ Under the Board's interpretive rules and Utah case law, the basic factors which establish "just cause" for an employee's separation from employment, and which are essential for a determination of eligibility to receive unemployment benefits, are: (1) culpability, (2) knowledge of expected conduct, and (3) control over the offending conduct. *Id.; Stegen v. Department of Employment Sec.*, 751 P.2d 1160, 1163

(Utah Ct.App.1988). The employer must establish all three factors to show that the employee is not entitled to unemployment compensation benefits. *Pro–Benefit Staffing,* 775 P.2d at 442.

### a. Culpability

The relevant administrative rule defines the culpability prong of the "just cause" test as follows:

This is the seriousness of the conduct or the severity of the offense as it affects continuance of the employment relationship. The discharge must have been necessary to avoid actual or potential harm to the employer's rightful interests.... The wrongness of the conduct must be considered in the context of the particular employment and how it affects the employer's rights. If the conduct was an isolated incident of poor judgment and there is no expectation that the conduct will be continued or repeated, potential harm may not be shown and therefore it is not necessary to discharge the employee.

Utah Admin. Code R475–5b1–2(1)(a) (1988).

Petitioner asserts that claimant violated the rules of professional conduct when she gave legal advice to clients, did not refer clients to petitioner on two occasions, and divulged confidential information to clients and potential clients. He cites to Rule 5.3 of the Utah Rules of Professional Conduct, which obligates a lawyer who has direct supervisory authority over a nonlawyer to "make reasonable efforts to ensure that the person's conduct is compatible with the professional obligations of the lawyer." Rule 5.3 also provides that the lawyer is responsible for conduct of such a person if that conduct would be a violation of the rules of professional conduct if the lawyer engaged in it. Rule 5.5 of the Utah Rules of Professional Conduct prohibits lawyers from engaging in or assisting others in the unauthorized practice of law. While this behavior would clearly jeopardize petitioner's interests if claimant continued to engage in it, it is not clear from the evidence in the record that claimant's alleged giving of legal advice actually rose to the level of

giving legal advice, or constituted anything more than an isolated incident of poor judgment. Further, the record is unclear as to what confidential information claimant disclosed to whom. Therefore, we do not find that claimant engaged in culpable conduct on these issues.

However, the record indicates that claimant's general work habits constituted culpable conduct to the extent that termination of claimant's employment was necessary to avoid both actual and potential harm to petitioner's interests. Claimant's inability to work harmoniously with court clerks and judges, along with sending documents to the wrong courts and failing to obtain information from the correct sources, resulted in petitioner's law firm acquiring a reputation for shoddy work and being difficult to deal with. Petitioner testified that one court refused to deal with claimant on routine scheduling matters, insisting on dealing directly with petitioner. Her abusive behavior to staff and clients could only hurt petitioner's interests. Claimant's conduct, despite frequent correction by petitioner, continued for nearly three years without substantial improvement.

This case is similar to *Rahimi v. Board of Review,* 706 P.2d 1063 (Utah 1985), in which the Utah Supreme Court upheld the Board's finding that a claimant had been discharged for just cause when he failed to complete work, threatened his supervisors, and failed, after being warned, to modify his behavior.

We find that petitioner has established the "culpability" prong of the "just cause" test and, therefore, the Board's conclusion that no harm had been shown by petitioner and that he overstated the seriousness of claimant's behavior is not reasonable or rational.

### b. Knowledge

Utah Admin. Code R475–5b–2(1)(b) (1988) states that "[t]he employee must have had a knowledge of the conduct which the employer expected." The Utah Supreme Court has interpreted this rule to mean that "[k]nowledge may not be established

unless the employer gave a clear explanation of the expected behavior or had a pertinent written policy, except in the case of a flagrant violation of a universal standard of behavior." *Kehl v. Board of Review,* 700 P.2d 1129, 1133 (Utah 1985). Rule 475-5b-2(1)(b) indicates that one way of showing that the employee had knowledge of the expected conduct is to establish that the employee had been given a specific warning and an opportunity to correct the objectionable conduct. *Id.*

The record indicates that petitioner, on numerous occasions, gave claimant specific instruction regarding appropriate behavior with office staff, court personnel, and clients. Claimant would improve her behavior for several days then revert back to her former behavior. Petitioner stated that he discussed her rudeness with her on nearly a daily basis, and instructed her, on many occasions, as to how, where, and when to send and request legal documents. Nevertheless, claimant failed to improve her performance. Therefore, we find that claimant knew or should have known the effect her ongoing conduct would have upon her employment. We explicitly reject as not being reasonable and rational the Board's conclusion that "whatever counseling the employer gave the claimant with regard to her 'office personality' was negated by his continued acceptance of her behavior so that ultimately the claimant was not given a clear standard of what the employer expected of her," on the basis that it does not reflect sound policy. Rule 475-5b-2(1)(b) indicates that an employer should both give his employee specific warning of objectionable behavior and then *an opportunity to correct his or her conduct.* Petitioner continued to work with claimant for an extended period of time, hoping that she would improve her behavior. We agree with the dissent of Board member Thomas R. Carlson:

> I conclude that Claimant's behavior was inappropriate and adverse to her employer's rightful interests. I recognize the employer was slow in reaching his decision to terminate the claimant, but it seemed clear that was the right decision for his business. An employer who is willing to take ample time to work with an employee to resolve objectionable conduct ought not to be penalized when he finally terminates the employee who demonstrates improved performance for a period of time and then reverts again to unacceptable conduct.

We find that petitioner has carried his burden on the "knowledge" prong of the "just cause" test.

c. Control

"The conduct must have been within the power and capacity of the claimant to control or prevent." *Kehl,* 700 P.2d at 1134. Further, "continued inefficiency, repeated carelessness, or lack of care exercised by ordinary, reasonable workers in similar circumstances, may be disqualifying depending on the reason and degree of the carelessness, the knowledge and control of the employee." Utah Admin. Code R475-5b-2(1)(c)(2).

Claimant's repeated temper tantrums, habitual rudeness, and other abusive behavior was solely within her personal control. Her inability to handle routine office tasks, despite repeated instruction on how to do them, indicates continued inefficiency and lack of ordinary care to the point of being disqualifying. Thus, petitioner has established the "control" prong of the "just cause" test, and the Board's ultimate conclusion that claimant did not have control of her conduct was not reasonable or rational.

Accordingly, we reverse the Board's decision and deny claimant unemployment benefits because we conclude that she was discharged for "just cause" within the meaning of the Employment Security Act.

BILLINGS and JACKSON, JJ., concur.