DEPARTMENT OF the AIR FORCE, Petitioner,

v.

DEPARTMENT OF EMPLOYMENT SECURITY, and Douglas K. Butler, Respondents.

No. 890095–CA.

Court of Appeals of Utah.

Jan. 2, 1990.

Dee V. Benson, U.S. Atty. by Robert H. Wilde (argued), Clare A. Jones, Sp. Assts. U.S. Atty., Midvale, for petitioner.

K. Allan Zabel, Lorin Blauer (argued), Salt Lake City, for respondent Dept. of Employment Sec.

Before GARFF, GREENWOOD and ORME, JJ.

GREENWOOD, Judge:

The Department of Air Force (Air Force) appeals a decision from the Board of Review (Board) of the Industrial Commission awarding Douglas K. Butler (Butler) unemployment compensation benefits. We affirm.

Butler worked as an aircraft mechanic for Hill Air Force Base from January 9, 1982 to September 25, 1988. His responsibilities required him to have security clearance. According to a report by the Air Force Office of Special Investigations (OSI), Butler sold cocaine to an undercover Air Force agent off the Base on May 13 and 20 and August 19 in 1988. The report states that Butler admitted to OSI that he had sold cocaine to the undercover agent, but denied selling to anyone else. The report also states that the Weber County attorney's office provided arrest warrants for Butler for three counts of distribution for value of a controlled substance. Butler was not, however, charged with any crime, apparently because he agreed to cooperate with law enforcement officials in an investigation of drug dealings among Air Force employees.

On September 14, 1988, Butler received a Notice of Proposed Removal from Air Force "for the offense of off duty misconduct of such major importance that the employee is unable to fulfill his job responsibilities (possession and distribution of controlled substances)." Butler also received an order forbidding him from reentering the military base. On September 19, 1988, Butler resigned from his employment with Air Force. Butler's supervisor failed, however, to notify the personnel office of Butler's resignation and on September 23, 1988, Air Force issued to Butler its decision to remove him from employment. Later, when Air Force learned of the supervisor's mistake, it cancelled the removal action and processed Butler's resignation.

On October 2, 1988, Butler filed for unemployment benefits. The Utah Department of Employment Security determined that Butler was ineligible to receive benefits because he had been discharged from his employment for committing an act constituting a crime and because his act was in

connection with his work or had an adverse effect upon Air Force's rightful interest. Butler appealed and a hearing was held before an appeals referee. Air Force was not represented by counsel at the hearing, but by layperson Air Force personnel. The appeals referee reversed the decision and allowed unemployment benefits to Butler on the ground that he was not discharged for just cause. On February 3, 1989, the Board affirmed the appeals referee's decision.

Air Force brought this appeal, raising the following issues: (1) Did the Board err in determining that Butler was eligible for unemployment benefits? and (2) Does the Board's determination undermine the purpose of the Employment Security Act and the Act's regulations?

## STANDARD OF REVIEW

■ Because this proceeding was commenced after the effective date of the Utah Administrative Procedures Act (UAPA), Utah Code Ann. § 63–46b–1 to –22 (1989), we review the Board's decision under the standards set forth in the Act. *Johnson v. Department of Employment Sec.*, 782 P.2d 965, 967 (Ct.App.1989); *Grace Drilling Co. v. Board of Review*, 776 P.2d 63, 66 (Utah Ct.App.1989). Determining whether an employee was terminated for just cause is a mixed question of law and fact. *Johnson*, 782 P.2d at 968. Under the UAPA, "we will not disturb the Board's application of its factual findings to the law unless its determination exceeds the bounds of reasonableness and rationality." *Pro–Benefit Staffing Inc. v. Board of Review*, 775 P.2d 439, 442 (Utah Ct.App.1989) (embracing the intermediate standard in reviewing mixed questions of law and fact set forth in *Utah*

*Dep't of Admin. Servs. v. Public Serv. Comm'n*, 658 P.2d 601, 610 (Utah 1983)).

## INELIGIBILITY FOR UNEMPLOYMENT BENEFITS

Air Force bears the burden of establishing that Butler's conduct warranted dismissal. *Pro–Benefit Staffing Inc.*, 775 P.2d at 442; Utah Admin.R. 475–5b1–3 (1987–88). As the initiator of the separation, Air Force is the primary source of information regarding the reasons for Butler's dismissal and hence bears the burden of proof. Utah Admin.R. 475–5b1–3 (1987–88).

Air Force first claims the Board erred in determining that Butler was not discharged for any of the following reasons that would render him ineligible for unemployment benefits under Utah Code Ann. § 35–4–5(b)(1)–(2) (1988): (1) just cause; (2) an act or omission in connection with employment, not constituting a crime, which is deliberate, willful, or wanton and adverse to the employer's rightful interest;[1] or (3) dishonesty constituting a crime in connection with his or her work as shown by the facts together with his or her admission, or as shown by his or her conviction in a court of competent jurisdiction of a crime in connection with that dishonesty.

### Just Cause

■ To establish just cause, Air Force has the burden[2] to show: (1) Butler's culpability, (2) Butler's knowledge or expected conduct, and (3) Butler's control of the offending conduct. *See Kehl v. Board of Review*, 700 P.2d 1129, 1133–34 (Utah 1985); *Johnson*, 782 P.2d at 968–72; *Pro–Benefit Staffing Inc.*, 775 P.2d at 442;

---

1. In *Lane v. Board of Review of Indus.Comm'n*, 727 P.2d 206, 210 (Utah 1986), Justice Zimmerman, writing for the three-justice majority, found that "just cause" and the "deliberate, willful, or wanton" standards were essentially a unitary standard. We analyze under both standards, nevertheless, because they are separately set forth in the statute, and, perhaps, out of an abundance of caution.

2. Although Air Force has the burden of proof to establish just cause, the regulations state that if sufficient facts are obtained from Butler, the Board is to make a decision based on the information available. Utah Admin.R. 475–5b1–3 (1987–88).

Utah Admin.R. 475–5b1–2 (1987–88). The failure to establish any one of the three factors is fatal to Air Force's claim of just cause. *Pro–Benefit Staffing Inc.*, 775 P.2d at 442–43.

■ Culpability "is the seriousness of the conduct as it affects continuance of the employment relationship." *Kehl*, 700 P.2d at 1133. Butler's conduct is clearly reprehensible. Under *Kehl*, however, seriousness of a claimant's conduct is not, by itself, grounds for ineligibility for benefits. The Board is obligated to consider the seriousness of a claimant's conduct "in the context of the particular employment and how it affects the employer's rights." *Id.;* Utah Admin.R. 475–5b1–2 (1987–88). Further, the employee's "discharge must have been necessary to avoid actual or potential harm to the employer's rightful interests." *Kehl*, 700 P.2d at 1133; Utah Admin.R. 475–5b1–2 (1987–88).

■ Air Force failed to show how Butler's conduct adversely affects its rights as an employer.[3] Amplifying what encompasses employers' rights or interests, the rules state that

> [a]ll employers, both public and private have the right to expect employees to refrain from acts which are detrimental to the business or would bring dishonor on the business name or the institution. Legitimate interests of employers include, but are not limited to: goodwill of customers, reputation of the business, efficiency, business costs, morale of employees, discipline, honesty, trust and loyalty.

Utah Admin.R. 475–5b2–2 (1987–88).

There was no evidence presented to the Board to demonstrate that Butler's acts brought any public notoriety or dishonor to Air Force. *See Clearfield v. Department of Employment Sec.*, 663 P.2d 440, 443 (Utah 1983) (police officer's act of sodomy was adverse to employer's rightful interest where the conduct was a matter of public notoriety). There was no evidence that Butler's conduct damaged efficiency, employee morale, or discipline. Nor was there any evidence that Butler was discharged to avoid potential harm to Air Force from his selling cocaine off base. Air Force simply argued at the hearing that Butler's conduct violated Air Force standards of conduct and consequently, he should be removed from employment. Air Force was, however, unable to identify the sources of their policy or standards of conduct.

On appeal, Air Force contends that the Board ignored evidence of Air Force's written anti-drug policy that advocates removal for violation. The evidence Air Force refers to is the National Narcotics Leadership Act of 1988 and an Executive Order issued by the President of the United States on September 15, 1986. These documents were not, however, presented at the hearing.[4] In fact, the Narcotics Leadership Act was not enacted until November 18, 1988, well after Butler's discharge. Even if the appeals referee were to take judicial notice of the Executive Order, as Air Force at oral argument suggested should have been done, it refers only to use of illegal drugs and not to the selling or distribution. Air Force's argument that one who sells drugs *a fortiori*, uses drugs, is without any foundation.

We do not doubt that Air Force may have legitimate reasons in dissuading its workforce from selling drugs off base.

---

**3.** We agree with Air Force that its interest in preventing drug use among its workforce is paramount. This interest is especially imperative considering the sensitive nature of Butler's activities as an aircraft mechanic working on multi-million dollar aircraft. *See, e.g., Johnson*, 782 P.2d at 970 (a government contractor in the business of building national defense products has a particular interest in maintaining a drug-free workplace to prevent national security threats). The issue before us, however, is how Butler's selling cocaine off base and during off duty hours affects Air Force's rightful interest.

**4.** This case is in vivid contrast to *Johnson*, where the evidence was clear that the employer, Thiokol, had a written policy clearly prohibiting drug use, which policy was available to all employees. *Johnson*, 782 P.2d at 970.

Air Force had ample opportunity to present evidence showing its rightful interest before the Board but was derelict in meeting its burden. Consequently, we find that based on the information before it, the Board's determination that Butler's conduct did not rise to the degree of culpability to provide a basis to deny unemployment benefits, does not exceed the bounds of rationality and reasonableness. Our finding precludes the need to address the knowledge and control prongs of the just cause test.

### Willful and Wanton

■ Although we fully agree with Air Force that Butler's acts are iniquitous, his conduct is not willful and wanton under the terms of section 35–4–5(b)(1) unless Air Force demonstrates that his conduct is connected with his work and is adverse to Air Force's interests. Butler's conduct need not occur on Air Force's premises or occur during his on duty hours; it need only have such connection to his duties and to Air Force's business that it is a subject of legitimate and significant concern for Air Force. *See Clearfield City*, 663 P.2d at 443; Utah Admin.R. 475–5bl–7 (1987–88). Air Force's failure to present any evidence to show how Butler's conduct affects its interests or business undermines its claim that Butler's willful and wanton act of selling cocaine off base is ground for disqualifying him from unemployment benefits.

### Dishonesty

■ Contrary to Air Force's claim, Butler was not discharged for dishonesty constituting a crime under section 35–4–5(b)(2). First, Butler was not convicted of a crime in a court of competent jurisdiction. Second, Butler's admission to the OSI officer and the appeals referee that he furnished the cocaine falls short of showing that he committed a crime. There would also need to be proof of an intent to distribute a controlled substance for value. *State v. Harrison*, 601 P.2d 922, 924 n. 5 (Utah 1979). Third, even if Butler's conduct constitutes "distribution for value" in violation of Utah Code Ann. § 58–37–8(1)(a)(ii) (Supp. 1989), the crime does not necessarily evidence his dishonesty. *See, e.g., State v. Bruce*, 779 P.2d 646, 655–56 (Utah 1989); *State v. Wight*, 765 P.2d 12, 18 (Utah Ct. App.1989) (the crime of robbery is not necessarily one of dishonesty). Most clearly, however, again Air Force failed to show a connection between Butler's alleged dishonesty and his work as is required by the statute.

### Quit or Discharge

■ Air Force also claims that Butler's resignation constitutes leaving work voluntarily without good cause, thus disqualifying him from unemployment benefits under section 35–4–5(a). The rules define voluntarily leaving work as where "the employee severed the employment relationship as contrasted to a separation initiated by the employer." Utah Admin.R. 475–5a–1 (1987–88). Air Force initiated the separation with the notice of proposed removal. Butler resigned, but only in the face of inevitable discharge, evidenced by Air Force's final removal letter. Further, under the rules, Butler would not escape disqualification by quitting in advance of a virtually certain discharge which would result in a denial of benefits. Utah Admin.R. 475–5a–6b (1987–88). Even the initial Utah Department of Employment Security determination, which concluded that Butler was ineligible for benefits, nonetheless recognized that he was in fact discharged notwithstanding his tendered resignation. We agree and find that Butler was discharged and did not leave voluntarily.

### Loss of License

■ Lastly, Air Force argues that Butler's loss of his security clearance is equivalent to loss of a license and Butler should, therefore, be disqualified under Utah Admin.R. 475–5b1–8.5 (1987–88). The loss of license provision that Air Force refers to is one of several examples listed in the rules of reasons for discharge. However, be-

cause Butler's conduct was not culpable, his loss of security clearance, even if equivalent to loss of a license, is not disqualifying. *See Wright's Furniture Mill, Inc. v. Industrial Comm'n,* 707 P.2d 113, 115 (Utah 1985) (per curiam); Utah Admin.R. 475–5b1–8 (1987–88) (in all of the examples given, the basic elements of just cause must be considered in determining eligibility for benefits).

### UNDERMINING PURPOSE OF UNEMPLOYMENT ACT

Air Force also claims that the Board's decision undermines the purpose of the Unemployment Security Act and the Board's rules and regulations. Air Force cites section 35–4–2 as setting forth the purpose of the Act to benefit the "health, morals, and welfare of the people of this state" and Utah Admin.R. 475–2–1.1 (1987–88) as stating that "[o]ne of the purposes of the [Act] is to lighten the burdens of persons unemployed through no fault of their own." Air Force contends that Butler's termination was his own fault and awarding him unemployment benefits undermines the Act's purpose. In affirming the Board's decision, we are simply applying Utah case law and the Unemployment Security Act's rules and regulations that the Utah Supreme Court has previously upheld as being within the limits of reasonableness and rationality. *Kehl,* 700 P.2d at 1134. Any dissatisfaction with the result is due not to the incongruence between the Board's decision and the purposes of the Act, but rather to the failure of Air Force to meet its burden by presenting probative evidence to the Board concerning its rightful interests in terminating employees who sell drugs off base, and how that conduct adversely affects it as an employer.

We affirm.

GARFF and ORME, JJ., concur.