Jasbir S. **BHATIA**, Petitioner,

v.

**DEPARTMENT OF EMPLOYMENT SECURITY; and Pizza Hut of Utah, Respondents.**

No. 910498–CA.

Court of Appeals of Utah.

June 2, 1992.

---

David G. Challed, Salt Lake City, for petitioner.

R. Paul Van Dam and Emma R. Thomas, Salt Lake City, for respondent Dept. of Employment Sec.

Before BENCH, BILLINGS and GARFF, JJ.

## OPINION

BILLINGS, Associate Presiding Judge:

Petitioner Jasbir S. Bhatia (Bhatia) seeks reversal of a final decision of the Board of Review of the Industrial Commission of

Utah (Board) denying him unemployment benefits. We affirm.

## FACTS

Pizza Hut of Utah (Pizza Hut) hired Bhatia as a cook on April 2, 1990. On October 24, 1990, Bhatia was scheduled to work the evening shift, from approximately 5:00 p.m. until closing time. Bhatia's duties included cutting breadsticks and pizzas as they came out of the ovens. Due to a special promotion, Pizza Hut was crowded that evening, and the staff was particularly busy.

Bhatia was behind in filling orders. Also, Bhatia had a reputation among the servers for not preparing orders in the sequence in which he received them. In view of this situation, one of the servers occasionally went into the cutting area to cut her own breadsticks to ensure her customers were properly served. Bhatia resented the server's presence in his work area and loudly told her several times to leave.

At approximately 7:30 p.m., Bhatia received a telephone call from another employer, informing Bhatia he had been discharged from a part-time position. Although Bhatia accepted this news calmly and returned to work, he again became irritated with the server.

The restaurant manager, having heard Bhatia's requests, was aware Bhatia was upset with the server. The manager turned from the cash register and asked him "to settle down," reminding him that everyone was under pressure. She advised him that, when the rush was over, they "would all sit down and talk" about the problem. Bhatia responded by throwing his hands in the air and announcing, in a voice loud enough for a customer to hear, "This is bullshit. I am leaving." Bhatia then checked out and left at approximately 8:00 p.m. while the restaurant was crowded and before the end of his shift. When Bhatia did not return to work that evening, the manager decided to terminate his employment.

Although Bhatia contacted Pizza Hut the next day to advise his employer that he wished to continue his employment, he was told he had been discharged. A meeting was scheduled the following day, at which time Bhatia was asked to sign a suspension notice pursuant to Pizza Hut's progressive discipline policy, but he refused. Pizza Hut has instituted a progressive discipline program to improve substandard employee performance which provides for oral and written warnings. Bhatia never received any formal disciplinary warnings prior to his discharge.

The Utah Department of Employment Security granted Bhatia unemployment benefits effective October 21, 1990, and Pizza Hut appealed. On March 12, 1991, a hearing was held before an administrative law judge. The administrative law judge reversed the department's decision, determining Bhatia was terminated for just cause. Bhatia appealed to the Board, which affirmed.

On appeal to this court, Bhatia claims he was not terminated for just cause because: (1) His conduct was an "isolated incident" and, thus, not sufficiently culpable; and (2) he did not have sufficient knowledge of what conduct Pizza Hut expected because its management failed to follow its progressive discipline policy.

## STANDARD OF REVIEW

■ Utah's Employment Security Act is to be "construed liberally in favor of affording benefits." *Nielsen v. Department of Employment Sec.*, 692 P.2d 774, 776 (Utah 1984) (per curiam); *accord DeLuca v. Department of Employment Sec.*, 746 P.2d 276, 278 (Utah App.1987). However, an employee is ineligible for unemployment benefits if the employee was "discharged for just cause" as determined by the Board. Utah Code Ann. § 35–4–5(b)(1) (1988).

Whether an employee was terminated for just cause is a mixed question of law and fact. *See Department of the Air Force v. Department of Employment Sec.*, 786 P.2d 1361, 1363 (Utah App.), *cert. denied sub nom. United States v. Industrial*, 795 P.2d 1138 (Utah 1990); *Johnson v. Depart-*

ment of Employment Sec., 782 P.2d 965, 968 (Utah App.1989). Utah courts have recently altered the traditional characterization of the standard of review for such issues because of the adoption of the Utah Administrative Procedures Act. In *Morton International, Inc. v. Auditing Division of the Utah State Tax Commission*, 814 P.2d 581 (Utah 1991), the Utah Supreme Court held that, under the UAPA it is only "appropriate to grant [an] agency deference on the basis of an explicit or implicit grant of discretion contained in the governing statute." *Id.* at 588; *accord Tasters, Ltd. v. Department of Employment Sec.*, 819 P.2d 361, 364 (Utah App. 1991). If such an award of discretion exists, the agency's action "should be affirmed if its decision is reasonable and rational." *Department of the Air Force v. Swider*, 824 P.2d 448, 451 (Utah App.1991); *accord Johnson–Bowles Co. v. Division of Sec.*, 829 P.2d 101, 107 (Utah App.1992); *Tasters*, 819 P.2d at 365. Otherwise, we apply a correction-of-error standard. *See Morton*, 814 P.2d at 588; *Johnson–Bowles*, 829 P.2d at 107.

■ To ascertain the proper standard of review in this case, we must thus determine if section 35–4–5(b)(1) grants the Board discretion in deciding whether an employee was terminated for just cause. The operative language in section 35–4–5(b)(1) states that unemployment benefits will not be awarded if the employee "was discharged for just cause ... if so found by the commission." In *Swider*, we concluded that, through this language, "the requisite grant of discretion was made by the Legislature to the Board." *Swider*, 824 P.2d at 451.[1] Therefore, we will uphold the Board's decision denying Bhatia unemploy-

ment benefits if it is reasonable and rational.

■ An employee is terminated for just cause if three factors are met: "(1) culpability, (2) knowledge of expected conduct, and (3) control over the offending conduct." *Nelson v. Department of Employment Sec.*, 801 P.2d 158, 161 (Utah App.1990); *accord* Utah Code Admin.P. R475–5b–102 (1991); *Grinnell v. Board of Review*, 732 P.2d 113, 114 (Utah 1987) (per curiam). The employer bears the burden of establishing just cause for the discharge, *see* Utah Code Admin.P. R475–5b–103 (1991); *Department of the Air Force*, 786 P.2d at 1363, and must satisfy all three conditions to demonstrate an employee is not entitled to unemployment benefits. *See Nelson*, 801 P.2d at 161; *Law Offices of David Paul White & Assocs. v. Board of Review*, 778 P.2d 21, 24 (Utah App.1989).

## CULPABILITY

■ Bhatia first claims his conduct was not sufficiently culpable to prevent him from obtaining unemployment benefits because his behavior was an isolated incident of poor judgment in a stressful situation.

Employee "culpability" is the first factor in the test for just cause. Board regulations define culpability as "the seriousness of the conduct or the severity of the offense as it affects continuance of the employment relationship." Utah Code Admin.P. R475–5b–102(1)(a) (1991). Board regulations further state that employers have a "right to expect employees to refrain from acts which are detrimental to the business" or which affect the goodwill of customers, business, efficiency, or discipline. Utah Code Admin.P. R475–5b–107 (1991).[2] Culpability may also be estab-

---

1. *See also Morton*, 814 P.2d at 588 & n. 40 (The statutory language "sales or leases of machinery and equipment purchased or leased by a manufacturer for use in new or expanding operations ... as determined by the commission" exemplifies a legislative grant of discretion.); *Robinson v. Department of Employment Sec.*, 827 P.2d 250, 252 (Utah App.1992) (The statutory language "left work voluntarily without good cause, *if so found by the commission* ... explicitly grants the commission discretion to determine issues involving voluntariness and good

cause."); *Tasters*, 819 P.2d at 364 ("In utilizing statutory language such as 'as determined by the commission,' the legislature has explicitly granted discretion to some agencies.").

2. *See also* Utah Code Admin.P. R475–5b–108(1)(d) (1991) ("Culpability is established if termination of the employee was required to maintain necessary discipline in the company.").

lished by the employee's insubordination.[3]

■ Whether employee misconduct is simply an "isolated incident of poor judgment," and thus not culpable conduct, is determined by balancing the employee's "[l]ongevity and prior work record" against the seriousness of the offense and how likely it is to be repeated. Utah Code Admin.P. R475–5b–102(1)(a)(1); *accord Nelson,* 801 P.2d at 161–62.

In *Kehl v. Board of Review,* 700 P.2d 1129 (Utah 1985), the Utah Supreme Court rejected the contention that a single violation is insufficient to demonstrate employee culpability. In *Kehl,* a forklift operator, terminated for violating a company safety rule, appealed the Board's denial of unemployment benefits. Relying on the Board regulations, the court affirmed, stating: *"[T]he proper emphasis under the culpability requirement should not be upon the number of violations;* rather, it should address the problem of whether the discharge was 'necessary to avoid actual or potential harm to the employer's rightful interest.' " *Id.* at 1134 (quoting Utah Code Admin.P. R475–5b–102(1)(a)) (emphasis added).

In *Trotta v. Department of Employment Security,* 664 P.2d 1195 (Utah 1983), a construction worker was discharged for deliberately failing to report for work when he knew his employer had a backlog of work. He appealed a denial of unemployment benefits, in part, on the basis that he was not sufficiently culpable. Although the Utah Supreme Court reversed and remanded because the basis for the Board's decision was unclear, the court noted:

A warning is generally required in single absence cases, where an employee usually has no reason to expect that one unexcused absence will lead to his discharge.... No warning, however, need be given when the employee knows, without being warned, that the absence will seriously interrupt the employer's operations.

*Id.* at 1200.

In its final decision, the Board adopted the findings and conclusions of the administrative law judge who stated:

[T]he record shows that right before the claimant elected to leave his shift without authorization the manager told him to calm down, assuring him that the rush would soon be over, and that they would all meet to discuss the problems that evening at that time. Rather than accepting the direction of the manager, the claimant further aggravated the problem by making an inflammatory remark, using foul language which could be overheard by a customer, and then walking off duty several hours before his shift was scheduled to end, leaving the restaurant in a very short-handed position. Although this is a close case in that there was no evidence presented that the claimant had engaged in similar behaviors in the past, the Administrative Law Judge does find the overall conduct of the claimant to be of a sufficiently culpable nature as to warrant a disqualification within the purviews of Section 35–4–5(b)(1)....

The Board also made the following findings:

In affirming the decision of the Administrative Law Judge, the Board notes that while the claimant had not violated the employer's rules prior to his last

---

**3.** Board regulations recognize that

[a]uthority is required in the work place to maintain order and efficiency. An employer has the right to expect that lines of authority will be maintained; that reasonable orders, given in a civil manner, will be obeyed; that supervisors will be respected and that their authority will not be undermined. In determining when insubordination (resistance to authority) becomes disqualifying conduct, the fact that there was a *disregard of the employer's interests* is the major importance.... [P]rovocative remarks to a superior or vulgar or profane language in response to a civil request may be insubordination if it is conducive to disruption of routine, negation of authority and impairment of efficiency.

Utah Code Admin.P. R475–5b–108(4) (1991); *see also Hohmann v. Department of Employment Sec.,* 688 P.2d 465, 465–66 (Utah 1984) (per curiam) (employee who "became angry, vulgar and profane" in presence of supervisor and others was properly denied unemployment benefits for insubordination); *accord Myers v. Employment Appeal Bd.,* 462 N.W.2d 734, 737–38 (Iowa Ct.App.1990).

night of work and while the acts resulting in his discharge were an "isolated incident", the incident itself was serious enough to constitute just cause for the discharge. In this case, the claimant had already been told his concerns would be addressed when the swarm of customers in the restaurant subsided. Rather than wait for an hour or two while continuing to work, the claimant swore loudly enough for customers to hear and walked off his shift, putting the employer in a serious bind and possibly offending customers. Under the circumstances, the Board agrees with the reasoning of the ALJ and concludes that the employer had just cause for discharging the claimant.

■ To successfully challenge the Board's findings, Bhatia must demonstrate that they are not " 'supported by substantial evidence when viewed in light of the whole record before the court.' " *Swider*, 824 P.2d at 451 (quoting Utah Code Ann. § 63–46b–16(4)(g) (1989)); *accord Salt Lake County v. State Tax Comm'n*, 819 P.2d 776, 778 (Utah 1991). "Substantial evidence" is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Grace Drilling Co. v. Board of Review*, 776 P.2d 63, 68 (Utah App.1989) (quoting *Idaho State Ins. Fund v. Hunnicutt*, 110 Idaho 257, 715 P.2d 927, 930 (1985)).

■ To facilitate our review, it is Bhatia's duty to "properly present the record, by marshaling all of the evidence supporting the findings and showing that, despite that evidence and all reasonable inferences that can be drawn therefrom, the findings are not supported by substantial evidence." *Swider*, 824 P.2d at 451; *accord Heinecke v. Department of Commerce*, 810 P.2d 459, 464 (Utah App.1991). Instead of marshaling the evidence supporting the findings, however, Bhatia has "insisted on emphasizing the evidence that supported his position, and left it to the court to sort out

what evidence actually supported the findings." *Heinecke*, 810 P.2d at 464. Bhatia has not adequately challenged the Board's findings and has failed in his duty to marshal the evidence. Therefore, we accept the Board's findings as conclusive. *See Merriam v. Board of Review*, 812 P.2d 447, 450 (Utah App.1991); *Nelson*, 801 P.2d at 161.

The Board's findings reveal Bhatia knew the restaurant was extremely busy, and he was scheduled to assist in closing up that night. Bhatia was vulgar in response to the manager's request to settle down until the rush was over. His vulgarity could be heard by Pizza Hut's customers. Furthermore, Bhatia's unauthorized departure in the middle of a busy shift placed unexpected pressure on the restaurant staff.

Finally, in terms of deciding whether Bhatia's conduct was just an "isolated incident of poor judgment," the record indicates that Bhatia worked for Pizza Hut only seven months. The manager testified that during that time "he had used foul language before and he had argued with employees before." The manager also stated Bhatia "had a real hard time with a supervisor. He would attempt to argue with people and do things his way whether we wanted him to or not."

Based on this evidence, the administrative law judge and the Board determined Bhatia was sufficiently culpable to warrant denial of unemployment benefits. We cannot, on the record before us, say this determination was unreasonable.

## KNOWLEDGE OF CONDUCT EXPECTED

■ Bhatia also claims that, because Pizza Hut did not follow its progressive discipline policy[4] by warning him that his behavior was improper, he did not have sufficient knowledge of his employer's expectations. Bhatia, thus, argues he had no way of knowing he would be discharged for

4. Pizza Hut's progressive discipline policy states that "[a]n Oral Warning is a tool to let an employee know that his/her performance is unacceptable," and "[a] written warning notifies an employee that his/her performance is considered a serious problem, and failure to improve could result in termination."

using vulgarity and leaving work during a busy shift.

The second factor in the test for just cause is the employee's "knowledge" of what behavior the employer expects. Board regulations specify the employee need not have intended to harm the employer but "should reasonably have been able to anticipate the effect his conduct would have." Utah Code Admin.P. R475–5b–102(1)(b) (1991).

An employer may demonstrate the employee had knowledge of the employer's expectations through "[a] specific warning," Utah Code Admin.P. R475–5b–102(1)(b); implementation of a progressive discipline program, see Utah Code Admin.P. R475–5b–102(1)(b)(1); or by establishing the violation is one of a "universal" standard of behavior the employee is presumed to know.[5]

The Board concluded Bhatia's behavior in angrily walking off the job in the middle of a busy shift at a crucial time for the employer's business, leaving others to assume his responsibilities, and his use of vulgarity within the hearing of customers was "a flagrant violation of a universal standard of behavior." Utah Code Admin.P. R475–5b–102(1)(b). We, again, do not find this decision unreasonable.

We conclude Bhatia was terminated for just cause because his conduct was sufficiently culpable and he had knowledge of what behavior his employer expected.[6] Therefore, we affirm the Board's denial of unemployment benefits.

GARFF, J., concurs.

BENCH, Presiding Judge (concurring):

In setting forth our standard of review, the main opinion refers generally to a grant of discretion from the legislature to the commission. I believe it is necessary to clarify that what is at issue in this case is a grant of discretion to apply the law, not a grant of discretion to interpret a statute. While the resulting standard of review is the same, each grant is distinct under *Morton International, Inc. v. State Tax Commission*, 814 P.2d 581, 588 n. 38 (Utah 1991).[1]

In this case, Bhatia does not assert that the commission's interpretation of "just cause," as set forth in its administrative rules, is erroneous; instead, he claims his actions simply did not constitute "just cause" for dismissal. This case is not, therefore, a review of the commission's interpretation of the term "just cause." Rather, it is a review of whether the commission's administrative rules were properly applied to the facts of this case.

As the main opinion correctly notes, the phrase "if so found by the commission," located in Utah Code Ann. § 35–4–5(b)(1) (1988), is an explicit grant of discretion to apply the law. This language designates the commission as the tribunal that must determine whether there is, or is not, "just cause." In order to make such a determination, the commission must apply the law to the facts of the case.

This explicit grant of discretion, however, goes only to the application of the law. It does not, as has been intimated in past decisions of this court,[2] explicitly

---

5. The regulations further state:

Knowledge of the employer's standards of behavior is usually provided in the form of verbal instructions, written rules and/or warnings. However, the warning is not always necessary for a disqualification to apply in cases of violations of a serious nature of universal standards of conduct of which the claimant should have been aware without being warned.

Utah Code Admin.P. R475–5b–108(1)(e); *accord Nelson*, 801 P.2d at 162; *Law Offices of David Paul White*, 778 P.2d at 25.

6. Bhatia does not challenge that he had control over his conduct, the third element required to

establish just cause. See *Nelson*, 801 P.2d at 161; Utah Code Admin.P. R475–5b–102(1)(c).

1. In particular, it should be noted that the analysis set forth in *Morton* for discovering an implicit grant of discretion refers only to the discretion to interpret a statute. See *Morton*, 814 P.2d at 588–89. There is no analysis set forth in *Morton* regarding an implicit grant of discretion to apply the law. That analysis has yet to be developed.

2. See, e.g., *Johnson–Bowles Co. v. Division of Secs.*, 829 P.2d 101, 113 (Utah App.1992); *Tasters Ltd. v. Department of Employment Sec.*, 819 P.2d 361, 364–65 (Utah App.1991).

grant any discretion to the agency to interpret statutory terms. *See Ferro v. Department of Commerce*, 828 P.2d 507, 514 n. 12 (Utah App.1991). In order for there to be an explicit grant of discretion to interpret a statute, the legislature must direct or authorize the agency to define the statutory term by rule.[3] Anything less is not an *explicit* grant of discretion to interpret the statute.

While the distinction between an explicit grant of discretion and an implicit grant of discretion may seem esoteric, an erroneous finding of an explicit grant of discretion prematurely ends the analysis set forth in *Morton*. *See Morton*, 814 P.2d at 589 (an implicit grant of discretion to interpret a statute may only be found after an unsuccessful attempt to interpret the statute through traditional rules of statutory construction); *Nucor Corp. v. State Tax Comm'n*, 832 P.2d 1294, 1296 (Utah 1992) (no implicit grant of discretion found until after supreme court concluded that traditional rules of statutory construction did

not "aid in determining [the] issue"). If an explicit grant of discretion is mistakenly found, we risk giving deference to an agency interpretation that is contrary to the legislature's own interpretation. *Cf. Morton*, 814 P.2d at 589 (legislature's interpretation governs over agency's); *Ferro*, 828 P.2d at 514 (agency's interpretation rejected because it would have nullified the statutory provision).[4]

Even though the analytical framework set forth by the supreme court in *Morton* is admittedly quite complex, parties would be wise to assist this court in properly determining our standard of review by distinguishing between UAPA and non-UAPA cases.[5] For UAPA cases, the parties should then distinguish between grants of discretion to apply the law and grants of discretion to interpret a statute. In some cases, both grants may need to be shown. We must also know whether the grant of discretion is explicit or implicit. The practical reality is that we do not have the judicial resources to test all the possible

---

3. *See, e.g.,* Utah Code Ann. § 7–3–19(4) (1988) ("The commissioner may, by rule or regulation, define the terms 'loans and extensions of credit' and 'person' as used in this section."); Utah Code Ann. § 26–6–3(2)(b) (1989) ("The department shall, by rule, define persons who shall be considered 'partners' for purposes of this section."); Utah Code Ann. § 26–21–13.5(3) (1989) ("The department has authority to define by rule 'small health care facility' for purposes of licensure under this section...."); Utah Code Ann. § 31A–20–107(5)(b) (1991) ("The commissioner shall define 'insignificant market share' by rule."); Utah Code Ann. § 59–12–104(16) (1987) ("For purposes of this subsection, the commission shall by rule define 'new or expanding operations' and 'establishment.'"). *Cf.* Utah Code Ann. § 63–46a–3(2), (3) (1989) (when rulemaking is required).

4. We may not defer to an agency's interpretation until we know that the legislature itself did not render its own discernible statutory interpretation. *Mor–Flo Indus. Inc. v. Board of Review of the Indus. Comm'n*, 817 P.2d 328, 330 (Utah App.1991) ("where legislative intent can be discerned, the agency's interpretation is given no deference"). We presume that the legislature drafted the statute anticipating that the traditional rules of statutory construction would be applied by the agency. *See Ferro*, 828 P.2d at 509. Until we apply the traditional rules of statutory construction, we simply cannot know whether the legislature has rendered its own

statutory interpretation, nor whether the agency's interpretation is at odds with the legislative intent.

5. It helps in understanding *Morton* to note that while the supreme court refers to the common law tests as "prior law," *Morton*, 814 P.2d at 588, they are still applicable in non-UAPA cases. *See* Utah Code Ann. 63–46b–1(2) (1989). The common law tests are therefore referred to throughout *Morton* in the present tense, thereby creating some confusion as to whether the traditional common law tests or the new statutory tests are being discussed. Common law, non-UAPA, tests identified in *Morton* from past administrative law cases include (1) whether the issue raised may be characterized as a mixed question of fact and law, *Morton*, 814 P.2d at 586, *see also Johnson–Bowles*, 829 P.2d at 107, *Tasters*, 819 P.2d at 363–64; (2) whether the agency was in a better position than the courts to give effect to legislative intent, *Morton*, 814 P.2d at 586; and (3) whether the use of broad and generalized statutory language "bespeaks" a legislative intent to delegate interpretation to the agency. *Id.* at 588. Despite the supreme court's express declaration that common law analysis does not apply in UAPA cases, language from the foregoing tests has unfortunately found its way into UAPA opinions. *See, e.g., Johnson–Bowles*, 829 P.2d at 107, 113; *Tasters*, 819 P.2d at 363–64, 365; and *Armstrong v. Department of Employment Sec.*, 834 P.2d 562, 565 n. 6 (Utah App. 1992).

rules of statutory construction in each case before concluding that there is an implicit grant of discretion. Unless the legislative intent is obvious, or is identified by a petitioner, we will likely defer to an agency's action. If a petitioner believes that an agency's action is contrary to legislative intent, the petitioner must present the rules of statutory construction that will disclose the legislature's intent. Otherwise, we may erroneously find an implicit grant of discretion and defer to the agency's action to the detriment of the petitioner.