*972 MEMORANDUM DECISION
CHRISTIANSEN, Judge:
{1 Carbon County seeks review of the Workforce Appeals Board's (the Board) decision awarding unemployment insurance benefits to a former county employee, Wade L. Marinoni. We affirm.
T2 The Board's factual findings establish that Marinoni had been employed by Carbon County as an emergency medical technician (EMT) for eighteen years,. In August 2010, Marinoni transported a patient complaining of chest pains to Castleview Hospital. Later that same day, he received a call from Nurse Lex Black (the nurse) at Castleview Hospital requesting a STAT transport for the same patient to the Utah Valley Regional Medical Center in Provo. After discussing the requested transport with the nurse, Marinoni "did not believe this was an emergency situation." Instead of personally responding immediately to the hospital, Marinoni called two other on-call employees to take the transport. Thereafter, Carbon County terminated Marinoni "for not taking the call himself and thereby causing a delay in the ambulance reaching the hospital." At the time of Marinoni's termination, Carbon County did not have a written policy on handling such STAT calls and had not had formal training for some time.
13 The Board determined that Carbon County had not carried its burden to prove just cause for Marinont's termination because it failed to prove that his conduct was culpable, that he acted with knowledge of Carbon County's expectations, and that he was in control of the conduct that led to his termination. Therefore, the Board concluded that Marinoni was entitled to unemployment benefits. Carbon County appeals, challenging the Board's factual findings and legal determinations and arguing that it established that it justly terminated Marinoni, rendering him ineligible for unemployment benefits.
T4 An individual is not eligible to receive unemployment benefits if discharged from his or her employment for "just cause." See Utah Code Ann. § 85A-4-405(2)(a) (Supp. 2011); Utah Admin. Code R994-405-201. "[Nlot every legitimate cause for discharge justifies a denial of benefits." Utah Admin. Code R994-405-201. To establish that Mar-inoni was justly terminated from his employment, Carbon County had to prove that Marinoni's conduct in not responding immediately and personally to the requested transport involved each of the following elements: (1) culpability, (2) knowledge, and (38) control. See id. R994-405-202 (listing the elements required to prove just cause); id. R994-405-208 (establishing that the employer carries the burden to prove just cause); see also Autoliv ASP, Inc. v. Department of Workforce Servs., 2001 UT App 198, ¶ 17, 29 P.3d 7.
I. Carbon County Failed to Marshal the Evidence to Support the Factual Findings It Challenges on Appeal.
T5 On appeal, Carbon County challenges some of the Board's factual findings, but it has not properly marshaled the evidence that supports the challenged findings.[1] See Utah R.App. P. 2(a)(9); Bhatia v. Department of Emp't Sec., 834 P.2d 574, 579 (Utah Ct.App.1992) (stating that a party challenging an agency's findings must "properly present the record, by marshaling all of the evidence supporting the findings and showing that, despite that evidence and all reasonable inferences that can be drawn therefrom, the findings are not supported by substantial evidence" (internal quotation marks omitted)). Instead, Carbon County reargues the facts that support its version of the events and challenges the credibility determinations made by the administrative law judge (ALJ) and the Board. See generally Friends of Maple Mountain, Inc. v. Mapleton City, 2010 UT 11, 112, 228 P.3d 1238 *973 ("[A] recital of the challenged findings with an attempt to reargue the facts [does not fulfill the marshaling requirement]. This court does not retry the facts, it reviews them for clear error. Therefore, appellants must first present the evidence in a light most favorable to the trial court and not attempt to construe the evidence in a light favorable to their case. Then, appellants must explain why those findings contradict the clear weight of the evidence." (citations and internal quotation marks omitted)); Chen v. Stewart, 2004 UT 82, ¶ 78, 100 P.3d 1177 ("Appellants cannot merely present carefully selected facts and excerpts from the record in support of their position [when marshaling the evidence]. Nor can they simply restate or review evidence that points to an alternate finding or a finding contrary to the trial court's finding of fact." (citations omitted)); Bhatia, 834 P.2d at 579 (determining that the agency's findings were improperly marshaled when the party challenging the findings "emphasiz{ed] the evidence that supported his position, and left it to the court to sort out what evidence actually supported the findings" (internal quotation marks omitted)).
16 Because Carbon County failed to properly marshal, we normally would not review the whole record to determine if the Board's factual findings are supported by substantial evidence. Instead, we would simply accept "the Board's findings as conclusive" and assume that the evidence supports the Board's factual findings. See Bhatia, 834 P.2d at 579. However, because the dissent has addressed the merits of Carbon County's argument, we must review the whole record.
II. The Board Made No Findings that Marinoni Knew the Patient Was Having an Active Heart Attack.
T7 Carbon County argues that it established both culpability[2] and knowledge[3] to justify Marinoni's termination because he knew that the patient needing to be transported was having an active heart attack and knew that delaying medical treatment could cause substantial harm to the patient. However, Carbon County's reliance on these facts is misplaced. Carbon County has not indicated where the Board made these critical factual findings,. - Furthermore, Carbon County did not object to the lack of such findings in the Board's decision. See In re KF., 2009 UT 4, 1161-63, 201 P.3d 985 (requiring a party challenging the adequacy of the findings on appeal to preserve the issue in the trial court by bringing the lack of findings to the trial court's attention and stating that it is "wholly necessary for a party to challenge and thus afford the trial court an opportunity to correct the alleged error of inadequately detailed findings in order to provide for meaningful appellate review of the court's decision" (internal quotation marks omitted)). See generally Olsen v. Labor Comm'n, 2011 UT App 70, 126, 249 P.3d 586 (applying In re KF'.'s general preservation principles to an appeal from an agency's delayed decision).
1 8 Although the Board did not definitively determine whether Marinoni knew the patient needing to be transported was having an active heart attack, the Board did find that Marinoni "provided credible testimony" that he did not consider it an emergency situation, did not consider the nurse's call to be urgent, and did not consider the nurse's request to be for a STAT transport. Carbon County essentially challenges these factual determinations by the Board. In doing so, Carbon County does not properly marshal the evidence that supports the Board's findings but instead points only to the evidence that supports its contrary position. See Bha-tig, 884 P.2d at 579.
T9 Even if Carbon County had marshaled the evidence, in seeking to overturn the Board's factual findings, Carbon *974 County bears a heavy burden. "[T]his court grants great deference to an agency's findings, and will uphold the agency action if the findings are 'supported by substantial evidence when viewed in light of the whole record before the court'" Department of Air Force v. Swider, 824 P.2d 448, 451 (Utah Ct.App.1991) (quoting Utah Code Ann. § 63-46b-16(4)(g) (1989) (current version at Utah Code Ann. § 68G-4-408(1), (M)(g) (2008) (granting this court jurisdiction and the authority to grant relief if "the ageney action is based upon a determination of fact, made or implied by the agency, that is not supported by substantial evidence when viewed in light of the whole record before the court"))). "Substantial evidence is more than a mere scintilla of evidence ... though something less than the weight of the evidence. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Grace Drilling Co. v. Board of Review, 776 P.2d 63, 68 (Utah Ct.App.1989) (omission in original) (citations and internal quotation marks omitted). "In applying the substantial evidence test, we review the 'whole record' before the court, and consider both evidence that supports the Board's findings and evidence that fairly detracts from them." Swider, 824 P.2d at 451. In reviewing the facts, this court has stated,
It is not this court's place to "substitute its judgment as between two reasonably conflicting views, even though we may have come to a different conclusion had the case come before us for de novo review." Similarly, "[it is the province of the Board, not appellate courts, to resolve conflicting evidence, and where inconsistent inferences can be drawn from the same evidence, it is for the Board to draw the inferences."
EAGALA, Inc. v. Department of Workforce Servs., 2007 UT App 43, ¶ 16, 157 P.3d 334 (alteration in original) (quoting Grace Drilling Co., 776 P.2d at 68).
110 Initially, Marinoni's testimony before the ALJ acknowledged the veracity of a written statement from the nurse requesting the STAT transport[4] and acknowledged that the nurse's statement indicated that the nurse told Marinoni that "[the patient was having an active MI with ongoing chest pain."[5] In testifying about these state *975 ments, Marinoni stated that he received "[al lot of transports" from Castleview Hospital that involved "routine chest pain." He also testified that he did not consider the call urgent because the nurse did not convey any urgency in his voice or demeanor in requesting the transport. Instead, the nurse simply responded "OK" when Marinoni said that he would "work on finding someone" to transport the patient. Given Marinoni's testimony, "relevant evidence [that] a reasonable mind might accept as adequate" exists to support the Board's factual findings that Marinoni did not consider the nurse's request to be urgent or require a STAT transport. See Grace Drilling Co., 776 P.2d at 68.
{11 Importantly, because Carbon County had not given Marinoni clear direction about how to respond when a nurse made a STAT transport request, both the ALJ and the Board found credible Marinoni's assertion that he did not think the call was a STAT emergency requiring his immediate response. Such credibility determinations are squarely within the ALJ and Board's duties. See Drake v. Industrial Comm'n, 939 P.2d 177, 181 (Utah 1997) ("We give deference to the initial decision maker on questions of fact because it stands in a superior position from which to evaluate and weigh the evidence and assess the credibility and accuracy of witnesses' recollections."); cf. Valcarce v. Fitzgerald, 961 P.2d 305, 314 (Utah 1998) ("Trial courts are accorded wide latitude in determining factual matters. They are in the best position to assess the credibility of the witnesses and to gain a sense of the proceeding as a whole."). Given the ALJ and Board's credibility determinations, the substantial evidence that supported the Board's findings, and the "great deference" we give to the Board's findings, see Swider, 824 P.2d at 451, we uphold the Board's challenged factual determinations. - We now examine Carbon County's legal arguments in light of the Board's factual determinations.
III. The Board Applied the Correct Legal Standard and Reasonably Determined that Carbon County Failed to Establish Culpability.
112 "When we review an agency's application of the law to a particular set of facts," we "will review the agency's decision with only moderate deference." Autoliv ASP, Inc. v. Department of Workforce Servs., 2001 UT App 198, ¶ 16, 29 P.3d 7 (internal quotation marks omitted). "Thus, we will uphold [the Board's] decision so long as it is within the realm of reasonableness and rationality." Id. (alteration in original) (internal quotation marks omitted).
T 13 Carbon County argues that the Board applied the wrong legal standard in determining whether Marinoni's actions were culpable. The Board determined that Carbon County had not established culpability because it "did not prove that the conduct was so harmful that discharge was its only option." The Board reasoned that given Mari-noni's eighteen years of employment with no similar conduct and Marinoni's "testimony that he did not fully understand [Carbon County]'s policy requiring him to treat this as a STAT transport, a lesser form of discipline should have been sufficient to ensure against any future problems." The Board also determined that Marinoni
provided credible testimony that he did not believe this was a STAT emergency. That testimony is bolstered by the telephone *976 call with the hospital nurse. When [Mari-noni] told the nurse he would "work on finding someone" to do the transport, the nurse replied "OK." If this had truly been an emergency, it seems the nurse would have said something else.
114 To establish culpability,
[tlhe conduct causing the discharge must be so serious that continuing the employment relationship would jeopardize the employer's rightful interest. If the conduct was an isolated incident of poor judgment and there was no expectation it would be continued or repeated, potential harm may not be shown. The claimant's prior work record is an important factor in determining whether the conduct was an isolated incident or a good faith error in judgment. An employer might not be able to demonstrate that a single violation, even though harmful, would be repeated by a long-term employee with an established pattern of complying with the employer's rules. In this instance, depending on the seriousness of the conduct, it may not be necessary for the employer to discharge the claimant to avoid future harm.
Utah Admin. Code R994-405-202(1). As Carbon County recognized, the focus of the culpability analysis is "whether the discharge was necessary to avoid actual or potential harm to the employer's rightful interest." See Kehl v. Board of Review, 700 P.2d 1129, 1134 (Utah 1985); accord Fieeiki v. Department of Workforce Servs., 2005 UT App 398, ¶ 4, 122 P.3d 706 (mem.).
$15 Although Carbon County takes issue with the Board's statement that Carbon County "did not prove that the conduct was so harmful that discharge was the only option," when read in its entirety, the Board applied the correct legal standard in weighing Marinoni's past employment history with the seriousness of his actions in not immediately responding to a STAT call in accordance with Carbon County's unwritten policy. See Southeastern Utah Ass'n of Local Gov'ts v. Workforce Appeals Bd., 2007 UT App 20, ¶¶ 9, 11, 155 P.3d 932 (discussing how the Board weighed the seriousness of the employee's actions with her twenty years of discipline-free work history and affirming the Board's determination that the employee's actions were not culpable because "a strong form of discipline short of termination would have prevented future harm to the employer"); see also Mineral Res. Int'l Inc. v. Department of Workforce Servs., 2009 UT App 184U, para. 5, 2009 WL 1964982 (mem.) ("The Board ... reasonably concluded that because [the employee had not disclosed specific, confidential financial information, the potential harm from [the employee's conduct was not so great as to require discharge."); Bhatia v. Department of Emp't Sec., 834 P.2d 574, 577-79 & n. 3 (Utah Ct.App.1992) (affirming the Board's decision that the employee violated a universal standard of care when the employee was insubordinate by storming out of a busy restaurant and using vulgar language after his supervisor told the employee to return to work and his concerns would be addressed shortly and when this was not an "isolated incident of poor judgment" because during the employee's seven months of employment he had previously used vulgar language and argued with other employees and supervisors).
 116 Given its credibility determinations, the Board's application of the unchallenged findings to the law was "within the realm of reasonableness and rationality" in determining that Carbon County did not prove that Marinoni's actions were culpable.[6] *977 See Autoliv ASP, Inc. v. Department of Workforce Servs., 2001 UT App 198, ¶ 16, 29 P.3d 7 (internal quotation marks omitted).[7] Thus, we affirm the Board's determination that Carbon County failed to establish the culpability element of just cause.
IV. The Board's Determination that Carbon County Failed to Establish Knowledge Is Also "Within the Realm of Reasonableness and Rationality."
117 To establish knowledge, Carbon County had to prove that it "provided a clear explanation of the expected behavior or a written policy" about responding to STAT calls from nurses.[8] See id. ¶ 18; see also Utah Admin. Code R994-405-202(2). The Board determined that Carbon County failed to establish the knowledge element when it did not prove that Marinoni received either a clear explanation of the behavior expected of him in responding to STAT calls or a written policy regarding the employer's expectations. The Board's findings establish that Carbon County did not have a written policy of how to handle a STAT transport until after Mari-noni's termination and that conflicting testimony was given about when the last formal training on STAT transport procedures had occurred. The Board also found Marinont's testimony credible, specifically his testimony that he believed that a STAT request must *978 be verified by a doctor, that he made a judgment call because the STAT call did not come from a doctor and the nurse did not sound urgent, and "that he believed he was following [Carbon County's] policy and believed he had the authority and experience to determine whether the call from the nurse" should be treated as a STAT call. Based on these unchallenged findings, the Board rationally concluded that Carbon County failed to carry its burden to provide either a clear explanation of the expected behavior or a written policy.[9] Thus, we affirm the Board's determination that Carbon County failed to establish the knowledge prong of just cause.
[¶ 8 In conclusion, we affirm the Board's determination that Marinoni is entitled to unemployment benefits because Carbon County failed to establish just cause.
{19 I CONCUR: JAMES Z. DAVIS, Judge.

. Specifically, Carbon County challenges the administrative law judge and Board's findings that if Marinoni "had considered the call to be urgent and needing an ambulance STAT, he and the other employee on duty, as the first response team, would have done the transport"; that Carbon County had not conducted "consistent training" on responding to a STAT transport and "hald] failed to show any consistent understanding of its transport policy prior to [Marinoni's] separation"; and that Marinoni's testimony regarding his understanding of the policy was credible.

. As to the culpability element of just cause, Carbon County argues that Marinoni's volitional conduct of not responding immediately to a call to transport a patient having an active heart attack was " 'so serious that continuing the employment relationship would jeopardize' [Carbon County's] rightful interest." - (Quoting Utah Admin. Code R994-405-202(1).)

. As to the knowledge element, Carbon County argues that Marinoni's delay in responding to the request to transport a patient experiencing an active heart attack violated a universal standard of conduct.

. The nurse's statements concerning the transport request were introduced at the hearing through a letter he had written after the incident. The nurse did not testify at the hearing.

. The dissent classifies the nurse's statement as "undisputed" and the request as "clear." See infra 121. However, although Marinoni did not dispute what the nurse said in his written statement, Marinoni's testimony about what those statements meant to him, which testimony the Board found credible, clearly disputed the meaning of the nurse's statements. Making factual determinations based on the weight given to the conflicting testimony is clearly the responsibility of the ALJ and the Board, as this court does not make credibility determinations or reweigh conflicting evidence. See EAGALA, Inc. v. Department of Workforce Servs., 2007 UT App 43, ¶ 16, 157 P.3d 334. Instead, we simply look to the evidence and determine whether "a reasonable mind might accept [the evidence] as adequate to support a conclusion." Grace Drilling Co. v. Board of Review, 776 P.2d 63, 68 (Utah Ct.App.1989) (internal quotation marks omitted).
Similarly, the dissent's reliance on Marinoni's alleged unprofessional driving during the transport as support that he was justly terminated is misplaced. See infra 1922, 30. Both the ALJ and the Board determined that Carbon County terminated Marinoni for his improper response to the nurse's request for a transport and not for his improper driving during the transport. Though the alleged poor driving was not the basis for his termination, Carbon County offered evidence and the Board found that "[dJuring the drive another employee complained that [Mari-noni] was driving too fast so he slowed down." Importantly, Carbon County does not challenge this particular finding on appeal. Thus, we should not delve into the record to determine whether the finding was supported by sufficient evidence. See Department of Air Force v. Swider, 824 P.2d 448, 451 (Utah Ct.App.1991). Additionally, Carbon County did not object to the Board's lack of consideration of Marinoni's driving as a reason to justify termination or to the adequacy of the findings. See generally In re K.F., 2009 UT 4, ¶¶ 61-63, 201 P.3d 985. Furthermore, the specific statements made by other EMTs regarding Marinoni's driving are not only absent from the Board's findings but also are not argued in Carbon County's brief. Cf. Ball v. Public Serv. Comm'n (In re Questar Gas Co.), 2007 UT 79, ¶ 40, 175 P.3d 545 ("[We have long held that it is improper to 'mak[e] blanket assertions and leav{e] the responsibility to the court to ferret out evidence from the record to support [them].'" (second, third, and fourth alterations in original) (citation omitted)). Thus, searching the record for facts that the Board did not find and the parties did not argue exceeds the scope of this court's review. See generally State v. Robison, 2006 UT 65, ¶¶ 16, 22, 147 P.3d 448 (stating *975 "'that 'other than for jurisdictional reasons [the court of appeals] should not normally search the record for unargued and unbriefed reasons to reverse a [district] court judgment'" and discouraging "the court of appeals [from engaging in the] exercise of critical thinking without the engaged participation of the parties whose affairs will be directly affected by the product of that thinking" (first, second, and third alterations in original) (citation omitted)).
Nevertheless, we are sympathetic to the dissent's view. An EMT should be required to respond as quickly as possible when asked to transport a patient who is having a heart attack. Had Carbon County simply carried its burden before the ALJ or the Board to develop those facts on which it now wants us to rely and had Carbon County properly challenged the Board's factual findings on appeal, we could consider them in our analysis. - Notwithstanding our sympathetic view, Carbon County must bear some of the responsibility for Marinoni's delayed reaction in responding to the call because, as the Board found, the County had not given its employees clear direction on how to handle a STAT transport request from a nurse-a situation that it now argues, and we agree, is of critical importance.

. Although the dissent would like us to give more weight to the potential for harm caused by Mari-noni's actions, see infra 129, this court's review is limited to whether the Board's determination was reasonable given its findings and not whether we would have weighed the evidence differently or come to a different conclusion if we were reviewing the Board's decision de novo. See EAGALA, Inc. v. Department of Workforce Servs., 2007 UT App 43, ¶ 16, 157 P.3d 334 ("It is not this court's place to 'substitute its judgment as between two reasonably conflicting views, even though we may have come to a different conclusion had the case come before us for de novo review.' Similarly, '[i]t is the province of the Board, not appellate courts, to resolve conflicting evidence, and where inconsistent inferences can be drawn from the same evidence, it is for the Board to draw the inferences.'" (alteration in original) (citation omitted) (quoting Grace Drilling Co. v. Board of Review, 776 P.2d 63, 68 (Utah Ct.App.1989))).
*977 This concept is discussed in the cases on which the dissent relies. See infra ¶¶ 24-29. In Martin v. Department of Workforce Services, 2004 UT App 264U, 2004 WL 1752833 (mem.), this court reviewed whether the Board acted reasonably in determining that an employee was terminated for just cause because she acted in a culpable manner and she violated a universal standard of care. See id. paras. 4, 9. In Martin, "[the Board determined [that the employer] had established that the conduct that led to [the employee's] termination was prohibited because using [the employer's computer] network to e-mail photographs of naked men violates a universal standard." Id. para. 4. Also, in Bhatia v. Department of Employment Security, 834 P.2d 574 (Utah Ct.App.1992), this court accepted the Board's factual findings regarding a universal standard of behavior because Bhatia had not properly marshaled the evidence. See id. at 579-80. This court upheld as reasonable the Board's determination that Bhatia's conduct "in angrily walking off the job in the middle of a busy shift at a crucial time for the employer's business, leaving others to assume his responsibilities, and his use of vulgarity within the hearing of customers" violated the universal standard. See id. at 576, 579. In this case, we are not reviewing the reasonableness of a board's universal standard determination because the Board here did not make such a determination. Instead, we are asked to determine whether the Board's just cause determination, based on the unchallenged findings, was reasonable.

. The dissent relies on Autoliv ASP, Inc. v. Department of Workforce Services, 2001 UT App 198, 29 P.3d 7, to support its culpability analysis. See infra ¶ 28. However, Autoliv's analysis was specifically limited to determining the knowledge prong of the just cause analysis. See Autoliv, 2001 UT App 198, ¶ 17, 29 P.3d 7. Additionally, in reversing the Board's conclusion, the Autoliv court applied the Board's unchallenged factual findings, see id. 115, rather than relying on facts that were not found by the Board.

. The alternative way to establish knowledge is to prove that "the conduct involved is a flagrant violation of a universal standard of behavior." See Autoliv ASP, Inc., 2001 UT App 198, ¶ 18, 29 P.3d 7 (internal quotation marks omitted); see also Utah Admin. Code R994-405-202(2). As we discuss above, see supra ¶ 7 & n. 3, Carbon County bases its argument about a violation of the universal standard on facts that were not found by the Board. Moreover, the Board made no legal determination regarding whether Mari-noni's actions violated such a universal standard. Because the Board did not address the universal standard and Carbon County relies on undetermined facts, we are limited in our review.
The dissent asserts that we should not limit our review because of lack of critical findings but instead rely on the undisputed record evidence to make the findings and legal conclusion necessary to support the conclusion that Carbon County established the knowledge element of just cause 'by demonstrating that Marinoni violated a universal standard. See infra ¶¶ 30-31. However, as we discuss above, see supra 110 & n. 5, the evidence is not undisputed, and we would be required to make credibility determinations and weigh the evidence to reach the determination advanced by the dissent, see supra 111. Furthermore, the dissent relies on Smith v. Workforce Appeals Board, 2011 UT App 68, 252 P.3d 372, in its universal standard analysis. See infra 124. Similar to Martin and Bhatia, which we examined in our culpability analysis, see supra ¶ 16 n. 6, the Smith court affirmed the Board's decision. See Smith, 2011 UT App 68, ¶ 1, 252 P.3d 372. In doing so, the Smith court did not address whether knowingly driving on a suspended license would violate a universal standard because the parties conceded that it would. See id. (12. Thus, the Smith court addressed whether the Board's factual determination that Smith knew he was driving on a suspended license was supported by the record evidence, while relying on the ALJ's determination that Smith's testimony was not credible. See id. ¶¶ 13, 16, 18.

. Because we affirm the Board's culpability and knowledge determinations, we do not separately address the Board's control determination. See EAGALA, Inc. v. Department of Workforce Servs., 2007 UT App 43, ¶ 20, 157 P.3d 334; Albertsons, Inc. v. Department of Emp't Sec., 854 P.2d 570, 574 (Utah Ct.App.1993) (''The failure to establish any one of the three factors is fatal to ... [the employer's] claim of just cause." (omission and alteration in original) (internal quotation marks omitted)). However, in order for Carbon County to prevail on appeal, as the dissent argues it should, Carbon County would need to establish that the Board was incorrect on each of the three requirements of just cause, including control.