*This opinion is subject to revision before final
publication in the Pacific Reporter*

**2013 UT 41**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

CARBON COUNTY,
*Petitioner,*

*v.*

WORKFORCE APPEALS BOARD,
DEPARTMENT OF WORKFORCE SERVICES, and
WADE L. MARINONI,
*Respondents.*

No. 20120251
Filed July 9, 2013

On Certiorari to the Utah Court of Appeals

Attorneys:

D. Scott Crook, Salt Lake City, for petitioner

Suzan Pixton, Salt Lake City, for respondents
Workforce Board of Appeals, Department of Workforce Services

Blake A. Nakamura, Salt Lake City, for respondent
Wade L. Marinoni

ASSOCIATE CHIEF JUSTICE NEHRING authored the opinion of the
Court, in which CHIEF JUSTICE DURRANT, JUSTICE DURHAM,
JUSTICE PARRISH, and JUSTICE LEE joined.

ASSOCIATE CHIEF JUSTICE NEHRING, opinion of the Court:

## INTRODUCTION

¶1  This case concerns the award of unemployment benefits to an emergency medical technician (EMT) formerly employed by Carbon County.  Carbon County appealed the decision of the Workforce Board of Appeals (Board) to the Utah Court of Appeals. The court of appeals affirmed.  It explained that the Board failed to make certain critical factual findings, and that facts in the record, even if uncontested, could not form the basis for legal arguments on appeal absent such findings.  We hold that the court of appeals erred in declining to consider certain uncontested facts in its legal analysis,

but affirm the court's ultimate determination upholding the award of unemployment benefits.

## BACKGROUND

¶2 Mr. Marinoni was employed by Carbon County as an EMT. He had worked as an EMT for eighteen years. He had one previous disciplinary incident in which he received a verbal warning for demanding overtime pay in a crew meeting when his supervisor told him to cover a weekend shift.

¶3 In 2010, while working as a first-response EMT, Mr. Marinoni received a call from a nurse in the Castleview emergency room requesting a STAT transport—meaning an immediate transport—of a patient to another hospital. Carbon County did not have a written policy instructing employees on how to conduct STAT transports. The employees who later testified regarding the incident could not recall with any certainty the last time STAT transport protocol was discussed during training. Mr. Marinoni acknowledged that the nurse told him "the patient was having an active MI[1] with ongoing chest pain" and "they wanted to see the patient in the cath lab as soon as possible." However, Mr. Marinoni said he did not "get the impression from [the nurse] that it was that urgent of a call." He did not identify the request as a STAT transport because he believed that a STAT transport request was only valid if it came from a doctor. The first response team will often contact off-duty EMTs to fill regular transports so that the first response team can be available for emergencies and STAT transports. When Mr. Marinoni told the nurse that he would "go ahead and fill the transport," the nurse "stated that was okay." And when Mr. Marinoni called the hospital back to explain that a regular transport would arrive in about twenty minutes, another nurse told him "that would be fine." It took approximately fifteen to twenty minutes for the off-duty EMTs to arrive and fill the transport.

¶4 When the off-duty EMTs arrived, they determined that the situation was serious and they needed another EMT to assist them. Mr. Marinoni ended up driving the ambulance. The other EMTs on the trip stated that Mr. Marinoni drove too fast, and when the EMTs

---

[1] MI stands for myocardial infarction, a medical term for heart attack.

and the patient receiving the transport expressed concern, Mr. Marinoni slowed down too much.

¶5    Mr. Marinoni was fired for failing to respond immediately to the transport request.  He applied for and was awarded unemployment benefits.  Carbon County appealed, arguing that it had established the elements of just cause required to deny a terminated employee unemployment benefits. The ALJ affirmed the award of benefits.  It found that Mr. Marinoni had acted in good faith according to his understanding of his employer's protocol. Carbon County then appealed to the Board, which accepted the ALJ's findings of fact and affirmed.  Carbon County next appealed to the Utah Court of Appeals, which affirmed the award.  Finally, Carbon County petitioned for certiorari to this court.  We granted certiorari to determine whether the court of appeals erred when it concluded that Carbon County's arguments were predicated on challenges to findings of fact and that Carbon County had failed to preserve those challenges.[2]  We have jurisdiction under Utah Code section 78A-3-102(3)(a).

## STANDARD OF REVIEW

¶6    On certiorari, this court reviews the court of appeals' decision for correctness.[3]  The court of appeals articulated the standard of review applicable to the Board's conclusions, which is also relevant to our review.[4]  "[I]t is the province of the Board, not appellate courts, to resolve conflicting evidence, and where inconsistent inferences can be drawn from the same evidence, it is for the Board to draw the inferences."[5]  Furthermore, appellate

---

[2] We also granted certiorari on a second question of whether the court of appeals erred in failing to consider section 35A-4-508(8)(f) of the Utah Code in connection with its preservation analysis. Because we resolve the first question in the affirmative, we need not address the second.

[3] *Rahofy v. Steadman*, 2012 UT 70, ¶ 7, 289 P.3d 534.

[4] *See State v. Ramirez*, 2012 UT 59, ¶ 7, 289 P.3d 444 (explaining that the correctness of the court of appeals' decision turns, in part, on whether it applied the correct standard of review).

[5] *Carbon Cnty. v. Dep't of Workforce Servs.*, 2012 UT App 4, ¶ 9, 269
(continued...)

courts should "give deference to the initial decision maker on questions of fact because it stands in a superior position from which to evaluate and weigh the evidence and assess the credibility and accuracy of witnesses' recollections."[6]

¶7    As we recently explained in *Murray v. Labor Commission*, in the absence of an express grant of discretion to an agency's decision, we do not apply an abuse of discretion standard[7] and instead utilize the standard framework employed in the review of trial court decisions.[8] Our review in this case presents a mixed question of law and fact. "Mixed questions fall somewhere in the twilight between deferential review of findings of fact and searching reconsideration of conclusions of law."[9] As such, the standard we employ in reviewing a mixed question "can be either deferential or non-deferential."[10] We grant more deference in cases where "the mixed finding is *not* 'law-like' because it does not lend itself to consistent resolution by a uniform body of appellate precedent, and/or on the premise that the mixed finding *is* 'fact-like' because the trial court [or agency] is in a superior position to decide it."[11] This is such a case. Due to the fact-intensive inquiry involved at the agency level, this case "does not lend itself to consistent resolution by a uniform body of appellate precedent." Because of the fact-intensive conclusions involved at the agency level, "the appellate court would be in an inferior position to review the 'correctness' of the . . . decision"[12] and the Board's award of unemployment benefits to Mr. Marinoni is entitled to deference.

---

[5] (...continued)
P.3d 969 (internal quotation marks omitted).

[6] *Drake v. Indus. Comm'n*, 939 P.2d 177, 181 (Utah 1997).

[7] 2013 UT 38, ¶ 29, 308 P.3d 461.

[8] *Id.* ¶ 23; *see also id.* ¶ 24 ("Mixed questions 'involv[e] application of a legal standard to a set of facts unique to a particular case.'" (alteration in original) (quoting *Manzanares v. Byington (In re Adoption of Baby B.)*, 2012 UT 35, ¶ 40, 308 P.3d 382)).

[9] *In re Adoption of Baby B.*, 2012 UT 35, ¶ 42.

[10] *Murray*, 2013 UT 38, ¶ 36.

[11] *In re Adoption of Baby B.*, 2012 UT 35, ¶ 42.

[12] *Id.* ¶ 43.

**ANALYSIS**

¶8 This case requires us to determine whether the court of appeals used the correct set of facts in making its legal determinations. For the reasons explained below, we conclude that the court of appeals correctly accepted the findings of fact in the ALJ decision and the Board's order because Carbon County expressly stated that it was not challenging these facts on appeal. But the court erred when it declined to consider certain undisputed facts apparent in the record. When we consider the Board's decision in light of these undisputed facts, however, we determine that the error was harmless. We therefore affirm the court of appeals on that ground.

## I. THE COURT OF APPEALS ERRED WHEN IT DECLINED TO CONSIDER AN UNDISPUTED FACT APPARENT IN THE RECORD

¶9 First, we note that the court of appeals correctly accepted the ALJ's and the Board's factual findings. In its briefing to this court, Carbon County insists that it "did not challenge the factual findings regarding Marinoni's purported subjective beliefs, nor did it challenge the sufficiency of the factual findings made by the Board." But in its briefing to both this court and the court of appeals, Carbon County included language challenging certain factual findings. Carbon County's briefing before this court states, "Marinoni delayed the patient's treatment by nearly one hour solely because he did not want to go on the transport," and its brief to the court of appeals stated, "Marinoni's testimony [that he did not know the STAT protocol] is simply not credible on its face." But the Board adopted the ALJ's findings of fact, which included that Mr. Marinoni "did not identify this as a stat transport because the request had not come from a doctor," "did not sense any urgency from the nurse," and was on a response team that "often contact[ed] off duty EMTs for nonemergencies or regular transports so that the first response team [could] be available for emergencies and stat transports." When parties expressly decline to challenge factual findings, we take them

at their word.[13] The court of appeals was correct to accept the Board's factual findings, and this court is bound by them as well.

¶10 The court of appeals then explained that Carbon County's reliance on the fact that Mr. Marinoni "knew that the patient needing to be transported was having an active heart attack" was misplaced.[14] According to the court of appeals, the Board "did not definitively determine whether Marinoni knew the patient needing to be transported was having an active heart attack," and "Carbon County did not object to the lack of such findings in the Board's decision."[15] The court of appeals cited *A.O. v. State (State ex rel. K.F.)* for the proposition that Carbon County's failure to alert the ALJ or the Board of this gap in the evidence and supplement the order with a specific finding means that Carbon County did not preserve the issue for appeal.[16]

---

[13] Furthermore, as the court of appeals noted, Carbon County did not marshal the evidence to support the factual findings it challenged on appeal. *Carbon Cnty. v. Dep't of Workforce Servs.*, 2012 UT App 4, ¶ 6, 269 P.3d 969 ("Because Carbon County failed to properly marshal, we normally would not review the whole record to determine if the Board's factual findings are supported by substantial evidence.").

[14] *Id.* ¶ 7. The court of appeals also explained that Carbon County could not, absent a more specific finding, rely on the fact that Mr. Marinoni "knew that delaying medical treatment could cause substantial harm to the patient." *Id.* We think this fact fits squarely within the analysis above, *supra* ¶ 8, and is foreclosed by the ALJ's unchallenged finding that Mr. Marinoni "did not sense any urgency from the nurse" and the Board's clarification in accepting the ALJ's findings that the ALJ "found the Claimant's testimony regarding how to handle a STAT request to be credible." The Board also explained that "[i]f the Claimant had considered the call to be urgent and needing an ambulance STAT, he and the other employee on duty, as first response team, would have done the transport."

[15] *Id.* ¶¶ 7–8.

[16] *Id.* ¶ 7 (citing *A.O. v. State (State ex rel. K.F.)*, 2009 UT 4, ¶¶ 61–63, 201 P.3d 985).

¶11 We do not think our case law governing challenges to the specificity of a judge's factual findings is controlling in this case. In *438 Main Street v. Easy Heat, Inc.*, the plaintiff challenged "the sufficiency of [the judge's] findings of fact, arguing that they [were] legally insufficient because they fail[ed] to adequately disclose the steps by which he reached his ultimate conclusion on each factual issue."[17] *State ex rel. K.F.* also involved a challenge to a judge's ruling on the ground that the "court's findings of fact were inadequately detailed."[18] To preserve a challenge to the legal sufficiency of a judge's factual findings, we held in both cases that the party first must give the judge an opportunity to supplement the findings.[19] But Carbon County did not make the argument that the ALJ's findings of fact were legally insufficient. And neither *438 Main Street* nor *State ex rel. K.F.* requires a litigant to request that a judge add undisputed facts to a ruling in order to preserve those facts for appeal. Litigants are free to use the undisputed evidence in the record to make legal arguments.[20]

¶12 The court of appeals' opinion also suggests that the patient's condition was in dispute in a subtle way: "[A]lthough Marinoni did not dispute *what* the nurse said in his written statement, Marinoni's testimony about what those statements meant to him, which testimony the Board found credible, clearly disputed the meaning of the nurse's statements."[21] Although the urgency of the situation and Mr. Marinoni's understanding of his employer's protocol were disputed below—a dispute resolved by the finding that Mr. Marinoni's testimony on these issues was credible—it was undisputed that the nurse told Mr. Marinoni the patient was having a heart attack. It was also undisputed that the patient's condition

---

[17] 2004 UT 72, ¶ 50, 99 P.3d 801.

[18] 2009 UT 4, ¶ 58.

[19] *438 Main St.*, 2004 UT 72, ¶ 56; *State ex rel. K.F.*, 2009 UT 4, ¶ 64.

[20] *See Flying Diamond Oil Corp. v. Newton Sheep Co.*, 776 P.2d 618, 622 (Utah 1989) (explaining that an appellate court need not remand for factual findings on critical issues "if the evidence in the record is undisputed and the appellate court can fairly and properly resolve the case on the record before it").

[21] *Carbon Cnty.*, 2012 UT App 4, ¶ 10 n.5.

was in fact serious. Mr. Marinoni himself testified that the nurse told him the patient was having an MI. And although he initially felt the call was not urgent, he testified that after he picked up the patient at the hospital and received the patient's information, "I thought we needed to get there in an urgent way." Mr. Marinoni never suggested that he disbelieved the nurse, only that he misapprehended the situation's urgency because the call had not come from a doctor.[22] The court of appeals correctly accepted the fact that Mr. Marinoni initially believed that the call was not urgent, but the court should also have accepted the undisputed fact that Mr. Marinoni knew the patient was having a heart attack based on the nurse's call.

¶13 We therefore hold that the court of appeals did not err when it concluded that some of Carbon County's arguments were predicated on challenges to findings of fact that Carbon County explicitly abandoned. But the court did err when it refused to factor into its legal conclusions the undisputed evidence in the record that Mr. Marinoni knew the patient was having a heart attack.

## II. THE BOARD'S LEGAL CONCLUSIONS REGARDING CULPABILITY ARE WITHIN THE SCOPE OF THE DEFERENCE GRANTED TO THE BOARD'S DECISION

¶14 Factoring in the uncontested testimony that Mr. Marinoni knew the patient was having a heart attack—a fact the Board likely took into account without explicitly noting—we affirm the court of appeals' ultimate conclusion that the Board's decision should be upheld. Under Utah Administrative Code rule R994-405-201, "[b]enefits will be denied if the claimant was discharged for just cause or for an act or omission in connection with employment . . . which was deliberate, willful, or wanton and adverse to the employer's rightful interest." The rule continues by explaining that "not every legitimate cause for discharge justifies a denial of

---

[22] Mr. Marinoni did assert that "a lot of transports we get from Castleview Hospital" suffer from "routine chest pain." But this was in response to a question about the urgency of chest pain specifically: "And wouldn't you think then if a patient is having chest pains that that might be an urgent issue?" Mr. Marinoni then testified that he understood the term MI to mean heart attack.

benefits. A just cause discharge must include some fault on the part of the claimant." As the Board further stressed, Carbon County "may have made a good business decision in discharging [Mr. Marinoni]," but the legitimacy of the discharge does not necessarily justify the denial of benefits.

¶15 Utah Administrative Code rule R994-405-202 requires that an employer prove three elements. To aid our analysis, we recite the full text of the rule:

> (1) Culpability.
>
> The conduct causing the discharge must be so serious that continuing the employment relationship would jeopardize the employer's rightful interest. If the conduct was an isolated incident of poor judgment and there was no expectation it would be continued or repeated, potential harm may not be shown. The claimant's prior work record is an important factor in determining whether the conduct was an isolated incident or a good faith error in judgment. An employer might not be able to demonstrate that a single violation, even though harmful, would be repeated by a long-term employee with an established pattern of complying with the employer's rules. In this instance, depending on the seriousness of the conduct, it may not be necessary for the employer to discharge the claimant to avoid future harm.
>
> (2) Knowledge.
>
> The claimant must have had knowledge of the conduct the employer expected. There does not need to be evidence of a deliberate intent to harm the employer; however, it must be shown the claimant should have been able to anticipate the negative effect of the conduct. Generally, knowledge may not be established unless the employer gave a clear explanation of the expected behavior or had a written policy, except in the case of a violation of a universal standard of conduct. A specific warning is one way to show the claimant had knowledge of the expected conduct. After a warning the claimant should have been given an opportunity to correct the objectionable

conduct. If the employer had a progressive disciplinary procedure in place at the time of the separation, it generally must have been followed for knowledge to be established, except in the case of very severe infractions, including criminal actions.

(3) Control.

(a) The conduct causing the discharge must have been within the claimant's control. Isolated instances of carelessness or good faith errors in judgment are not sufficient to establish just cause for discharge. However, continued inefficiency, repeated carelessness or evidence of a lack of care expected of a reasonable person in a similar circumstance may satisfy the element of control if the claimant had the ability to perform satisfactorily.

(b) Department recognizes that in order to maintain efficiency it may be necessary to discharge workers who do not meet performance standards. While such a circumstance may provide a basis for discharge, this does not mean benefits will be denied. To satisfy the element of control in cases involving a discharge due to unsatisfactory work performance, it must be shown the claimant had the ability to perform the job duties in a satisfactory manner. In general, if the claimant made a good faith effort to meet the job requirements but failed to do so due to a lack of skill or ability and a discharge results, just cause is not established.

This court has explained that "[t]he Unemployment Security Act was created to provide a cushion for the shocks and rigors of unemployment and is to be liberally construed to assist those who are attached to the work force."[23] An employer is well within its rights to discharge an employee for unsatisfactory performance, but "the rule is that mere inefficiency or failure of good performance as the result of inability or incapacity, inadvertences, isolated instances of ordinary negligence, or good-faith errors in judgment or decisions

---

[23] *Logan Reg'l Hosp. v. Bd. of Review of the Indus. Comm'n*, 723 P.2d 427, 429 (Utah 1986).

do not constitute culpable conduct which precludes a discharged employee from receiving unemployment compensation benefits."[24]

¶16 The Board ruled that Carbon County failed to establish any of the three elements, although the ALJ determined that Carbon County failed to establish only the first two elements: culpability and knowledge. We hold that the Board's conclusions regarding the first element, culpability, are entitled to deference.

¶17 Carbon County takes issue with language in the Board's opinion stating that Carbon County did not prove that the "conduct was so harmful that discharge was its only option." But the court of appeals held that "when read in its entirety, the Board applied the correct legal standard in weighing Marinoni's past employment history [against] the seriousness of his actions in not immediately responding to a STAT call in accordance with Carbon County's unwritten policy."[25] We agree. The Board analyzed Mr. Marinoni's conduct in the context of our case law[26] before ultimately concluding that, given Mr. Marinoni's eighteen-year employment history and his understandable misapprehension of Carbon County's policy, a lesser form of discipline would have been sufficient to prevent future harm.

¶18 Carbon County argues that the ALJ's statement that Mr. Marinoni "should have verified with a doctor about whether or not this was a stat transport, even based on his understanding of the policy at the time," proves that Mr. Marinoni's "conduct was not an incident of poor judgment but was instead a volitional act." Carbon County then points to cases that provide examples of employees

---

[24] *Id.*

[25] *Carbon Cnty. v. Dep't of Workforce Servs.*, 2012 UT App 4, ¶ 15, 269 P.3d 969.

[26] The Board discussed at length *Logan Regional Hospital*, 723 P.2d 427, where the court affirmed the Board's award of benefits after an employee failed to operate hospital equipment according to policy, and *Gibson v. Department of Employment Security*, 840 P.2d 780 (Utah Ct. App. 1992), where the court reversed the Board and awarded benefits after an "unintentional and an unusual coincidence" resulted in an employee with an "exemplary work record over nearly twenty years" divulging security information, *id.* at 782, 785.

who were discharged for a single act of misconduct. Carbon County misreads the ALJ's statements. First, the record includes an interview the Carbon County ambulance director conducted with Mr. Marinoni two days after the incident:

> Ambulance
> Director:  If anyone besides a Doc. calls for a stat [transport,] what is the standard procedure or response from any ambulance member?
>
> Mr. Marinoni:  Ask to talk to the Doc. to confirm the stat [transport] and get any further info.

But Mr. Marinoni testified before the ALJ that, although he was aware of the proper protocol when he answered that question, he learned that information "in the days after" the incident. Furthermore, the ALJ's findings specifically state that Mr. Marinoni "did not identify this as a stat transport because the request had not come from a doctor" and did not ask to speak to a doctor because he "did not sense any urgency from the nurse." The ALJ concluded that Mr. Marinoni "was acting in good faith . . . according to his understanding of the protocol."

¶19 In context, the statement that Mr. Marinoni "should have" verified the STAT transport request with a doctor, even under his understanding of the policy, does not mean that he deliberately disobeyed the policy, especially since it is not clear that verification was part of the policy. The record does not answer the question of who has the authority to order a STAT transport. Even the written policy, created in response to the incident in question, states only that STAT transports "can be requested by any Doctor."[27] Despite Mr. Marinoni's conclusion that he should have verified the STAT status of the transport request, he did not know that verification was required under the policy. Mr. Marinoni's comment that he should have verified the request was made with the benefit of hindsight.

---

[27] The written policy goes on to explain that STAT transport requests should be verified by a doctor if requested by another employee "to insure that the first call ambulance is not being requested unnecessarily."

The ALJ was similarly acknowledging that Mr. Marinoni's conduct was unsatisfactory and negligent. But "ordinary negligence[ ] or good-faith errors in judgment or decisions do not constitute culpable conduct which precludes a discharged employee from receiving unemployment compensation benefits."[28] Additionally, although the Board accepted the ALJ's findings of fact, the sentence in question appears in the ALJ's analysis of the element of control, and the Board reversed the ALJ on that issue.

¶20 Mr. Marinoni's coworkers' complaints regarding his driving are troubling, but as the court of appeals noted, it was his failure to act promptly after receiving the nurse's call that was the basis for his termination.[29] There is no suggestion that Mr. Marinoni had ever received complaints for his driving in the past, and the record is clear that, although he did not respond to the satisfaction of his coworkers, he did slow down. Furthermore, Carbon County has not pointed to anything in the record specifying that Mr. Marinoni's driving, which his coworkers stated reached speeds of about ninety to one hundred miles per hour, violated his employer's STAT transport policy.

¶21 Because we accept the finding that Mr. Marinoni's failure to act promptly when he received the call was a good faith error in judgment, the cases Carbon County cites are distinguishable. *Fieeiki v. Department of Workforce Services* involved a single act of misconduct, but the misconduct in question was domestic violence committed by a peace officer; it was "not an innocent mistake of 'poor judgment' or ordinary negligence, but rather a volitional act."[30] In *Kehl v. Board of Review of Industrial Commission*, the claimant "knowingly violated a safety rule regarding forklift operations," and

---

[28] *Logan Reg'l Hosp.*, 723 P.2d at 429.

[29] *See Carbon Cnty.*, 2012 UT App 4, ¶ 10 n.5.

[30] 2005 UT App 398, ¶ 5, 122 P.3d 706; *see id.* ¶ 4 ("While the conduct in question may be an 'isolated' event, we cannot say it was merely an 'incident of *poor judgment*.' Both parts of the phrase are necessary, and simply because an event is 'isolated' is not enough to negate a finding of culpability." (citation omitted)).

the discharge was based on the claimant's second offense.[31] And in *Pecic v. Department of Workforce Services*, the employee "had been previously warned" about updating food temperature logs without actually checking the food's temperature when she was discharged for repeating that conduct.[32]

¶22 There is little dispute that Mr. Marinoni made a serious mistake, but as the court of appeals noted, "Carbon County must bear some of the responsibility for Marinoni's delayed reaction in responding to the call because, as the Board found, the County had not given its employees clear direction on how to handle a STAT transport request from a nurse."[33] The potential risk in any case involving an emergency response team is high, but the Board determined that Mr. Marinoni's eighteen-year work history and good faith efforts at compliance outweighed the seriousness of the misconduct and mitigated the potential for future harm to the employer. The court of appeals explained that although the potential for harm is high, "this court's review is limited to whether the Board's determination was reasonable given its findings and not whether we would have weighed the evidence differently or come to a different conclusion if we were reviewing the Board's decision de novo."[34] We agree with the court of appeals that the Board's determination that Carbon County failed to establish culpability should be upheld. We therefore affirm.

## CONCLUSION

¶23 The Board determined that Carbon County did not meet its burden to demonstrate just cause for termination and therefore affirmed Mr. Marinoni's award of unemployment benefits. The court of appeals should have included in its legal calculations the uncontested fact that Mr. Marinoni knew the patient was having a

---

[31] 700 P.2d 1129, 1132 (Utah 1985). Although the claimant in *Kehl* had signed a card indicating she understood the procedure she was later discharged for violating, she alleged that the exhaust fumes from faulty equipment had affected her judgment. The ALJ discounted this testimony. *Id.* at 1131–32.

[32] 2011 UT App 115, ¶ 3, 251 P.3d 869.

[33] *Carbon Cnty.*, 2012 UT App 4, ¶ 10 n.5.

[34] *Id.* ¶ 16 n.6.

heart attack, but we reach the same result regardless. The Board's decision falls within the scope of afforded deference. We therefore affirm.

———————