**2015 UT App 248**

# THE UTAH COURT OF APPEALS

KENNETH L. GRAY,
Petitioner,
*v.*
DEPARTMENT OF WORKFORCE SERVICES,
Respondent.

Per Curiam Decision
No. 20150420-CA
Filed October 1, 2015

Original Proceeding in this Court

Kenneth L. Gray, Petitioner Pro Se

Suzan Pixton, Attorney for Respondent

Before JUDGES GREGORY K. ORME, J. FREDERIC VOROS JR., and
JOHN A. PEARCE.

PER CURIAM:

¶1 Kenneth L. Gray seeks review of the final decision of the Workforce Appeals Board (the Board). Gray asserts that the Board erred in determining that he quit his position without good cause, thereby making him ineligible for unemployment benefits and also requiring him to pay back benefits that he had already received.

¶2 The Board's decision concerning whether a person voluntarily quit his employment and the associated inquiries concerning that person's qualification for benefits are mixed questions of fact and law that are more fact-like because the case "does not lend itself to consistent resolution by a uniform body of appellate precedent." *Carbon County v. Workforce Appeals Bd.*, 2013 UT 41, ¶ 7, 308 P.3d 477 (citation and internal quotation marks omitted). "Because of the fact-intensive conclusions involved at the agency level," the Board's determination in such

matters is entitled to deference. *Id.* "When a petitioner challenges an agency's findings of fact, we are required to uphold the findings if they are supported by substantial evidence when viewed in light of the whole record before the court." *Stauffer v. Department of Workforce Servs.*, 2014 UT App 63, ¶ 5, 325 P.3d 109 (citations and internal quotation marks omitted).

¶3    Gray argues that the Board erred in denying him benefits on the basis that he had voluntarily quit his employment. Gray admits that he quit his employment,[1] but he claims that extenuating circumstances forced him to quit. A claimant who voluntarily quits employment may still be entitled to benefits if he shows good cause for the separation or if denying benefits would be contrary to equity and good conscience. *See* Utah Admin Code. R994-405-101(3).

> To establish good cause, a claimant must show that continuing the employment would have caused an adverse effect which the claimant could not control or prevent. The claimant must show that an immediate severance of the relationship was necessary. Good cause is also established if a claimant left work which is shown to have been illegal or to have been unsuitable new work.

---

1. Gray argues briefly that he was constructively discharged, i.e., that his employer made his work environment so hostile that it could reasonably foresee that Gray would quit. Gray does not separately analyze this claim and supports it with the same facts and arguments supporting his position that he had good cause to quit his job. Under the circumstances, we see no reason to separately analyze the constructive discharge claim as it mirrors the arguments Gray makes to support his claim that he had good cause to quit his employment.

*Id.* R994-405-102. Further, even if an adverse effect is shown, good cause may not be found if the claimant reasonably could have continued working while looking for other employment. *See id.* R994-405-102(1)(b).

¶4 Gray asserts that he had good cause to end his employment with the State of Utah's Department of Technology Services (Employer). Specifically, Gray argues that Employer added time-consuming clerical data-entry tasks to his job which were not required when he was hired and which he could not perform due to arthritic conditions in his hands. Gray contends that because of this he had no option but to quit his job. The Board found that Gray's contentions were not supported by the evidence. Evidence adduced at Gray's hearing supports the Board's decision. Specifically, after issues arose concerning whether certain tasks were being completed, Gray's supervisor asked that after performing those tasks Gray input a time log into a spreadsheet. Gray's supervisor estimated that performing the underlying tasks and inputting the information into a spreadsheet would take approximately one to two hours. Gray refused to perform this task, arguing initially that it was a clerical function that was not part of his job duties. He later asserted that he could not perform the new task because it required hours of typing which he could not perform due to his arthritis.

¶5 In response to Gray's claim that he could not perform the new duty because of a medical condition, the matter was referred to Employer's human resources department (HR). HR, in turn, sent Gray an email inviting him to apply for an accommodation under the Americans with Disabilities Act (ADA). HR also sent Gray all the information and forms necessary to apply for the accommodation. Gray refused, claiming that it would be dishonest to seek an ADA accommodation. Gray never adequately explained why it would be dishonest to seek such an accommodation given the physical

limitations he claimed. Gray's supervisor also testified that in response to Gray's complaints concerning the time and effort required to perform the new task, he performed the task himself. He indicated that the new task required only an additional 550 characters to be typed per day and added only about twenty to thirty minutes of extra work. The Board found this testimony to be credible while conversely determining that Gray had consistently exaggerated the amount of typing necessary to complete the new assignments. Because the new typing requirement was minimal and because Gray was welcome to apply for an accommodation, if indeed he was unable to perform the work, the Board found that Gray did not have good cause to quit his employment. He could have remained employed and performed the work, sought an accommodation, or sought some other way to remedy his concerns. Based on the totality of circumstances, we cannot say that the Board abused its discretion in determining that Gray did not have good cause to quit his employment.

¶6 Additionally, the Board determined that denying benefits in this case would not be contrary to equity and good conscience. *See id.* R994-405-103. To meet this standard, a claimant must demonstrate that his actions were reasonable and that there were mitigating circumstances that would make the denial of benefits an affront to fairness. *See id.* R994-405-103(1)(a). The Board concluded that Gray's failures to attempt to perform the new assignment, to exhaust his opportunities to resolve the issue with Employer, and to seek an ADA accommodation, were not reasonable. Accordingly, the Board found that Gray failed to meet the standards of the equity and good conscience exception. Gray has provided us with no evidence to demonstrate that the Board abused its discretion in so finding.

¶7 Gray makes three additional arguments that were not preserved during the administrative process: (1) the Board denied him due process in adjudicating him guilty of fraud; (2)

the Board's decision cannot stand because a representative of Employer provided "impeachable falsified testimony;" and (3) one of Employer's witnesses was unqualified because she lacked personal knowledge of the facts presented. In order to preserve an argument, it must be raised in such a manner as to allow the court or agency an opportunity to correct any error. *See State v. Briggs*, 2006 UT App 448, ¶ 4, 147 P.3d 969 (stating that claimed errors must be brought to the attention of the district court to give the court an opportunity to correct any error). Because Gray failed to establish that he raised these issues before the Board, he fails to demonstrate that the issue is preserved for review. *See Holman v. Callister, Duncan & Nebeker*, 905 P.2d 895, 899 (Utah Ct. App. 1995). We will therefore not consider those arguments.

¶8      Accordingly, we decline to disturb the decision of the Board.

—————————